WILLIAMS *v.* STATE.

[94 South. 882.  In Banc, No. 22532.]

1. CONSTITUTIONAL LAW. *Law denouncing sale of obscene literature not violative of United States Constitution, guaranteeing right of free press.*

   Section 1292, Code 1906 (section 1025, Hemingway's Code), providing among other things, that a person who sells an obscene book, writing-paper, etc., shall be guilty of a misdemeanor, is not violative of the Fourteenth Amendment to the federal Constitution.

2. CONSTITUTIONAL LAW. *Law denouncing sale of obscene literature not denial of freedom of press.*

   Neither does it violate either of sections 13, 14, 16, 26, and 32 of our state Constitution of 1890.

3. OBSCENITY. *Law denouncing sale of obscene literature held exercise of police power.*

   This statute is an exercise of the police power of the state.

4. CONSTITUTIONAL LAW. *Liberty of speech and press implies right of free utterance and publication, except where they would constitute public offense.*

   The constitutional liberty of speech and of the press implies a right to freely utter and publish whatever the citizen may please, and to be protected against any responsibility for so doing, except as far as such publications, from their blasphemy, obscenity, or scandalous character, may be a public offense.

5. OBSCENITY. *"Obscene," as used in law denouncing sale of obscene literature, defined.*

The word "obscene" used in the statute means offensive to senses; repulsive; disgusting; foul; filthy; offensive to modesty or decency; impure; unchaste; indecent; lewd (quoting Words and Phrases, Second Series, Obscene).

6. INDICTMENT AND INFORMATION. *Defects in affidavit not objected to before verdict cured after verdict; constitutional guaranty that accused know nature of accusation not violated by affidavit when apparent that defendant did know.*

The several disjunctive charges contained in the affidavit, though perhaps defective, were not questioned before verdict either by demurrer or motion to quash; consequently these defects are cured after verdict. Section 26 of the state Constitution, under which a defendant is entitled to know the nature and cause of the accusation against him, was not violated by this affidavit, it being apparent from this record that this defendant was so informed.

7. CRIMINAL LAW. *Sentence justified under plea of nolo contendere.*

A plea of *nolo contendere* is in effect that the defendant will not contend with the prosecuting power. Under it the court is justified in imposing sentence.

ETHRIDGE and ANDERSON, JJ., dissenting.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

E. K. Williams was convicted of an offense, and he appeals. Affirmed.

*Robert S. Phifer,* for appellant.

Brief of the argument. "Let there be light." Genesis I, 3. "And ye shall know the truth, and the truth shall make you free." John VIII, 32. "I know and am persuaded by the Lord Jesus, that there is nothing unclean of itself; but to him that esteemeth anything to be unclean, to him it is unclean." Romans XIV, 14. "Unto the pure all things are pure; but unto them that are defiled and unbelieving, is nothing pure; but even their mind and conscience is defiled." Titus I, 15. "I propose to beg no question, to shrink from no conclusion, but to follow truth wherever it may lead. . . . If the conclusions that we reach run counter to our prejudices, let us not flinch; if they challenge insti-

tutions that have long been deemed wise and natural, let us not turn back." Page 12, "Progress and Poverty," by Henry George (First edition, 1880).

． ． ． ． ．

My contention is that section 1025 of the Hemingway Code is in conflict with both the Constitution of the United States and the Constitution of the state of Mississippi, and is therefore void.  1st.  The statute is void because it conflicts with the Fourteenth Amendment to the Constitution of the United States.  For the sake of brevity, I shall do no more here than cite a few authorities; beginning on page 12, this matter is examined at considerable length. Mence on Libel, p. 312; 2 Coke's Institutes, 527, 77, 87.

"Obscene" literature, and constitutional law a forensic defense of the freedom of the press by Theodore Schroeder legal counsellor, to the Medico-Legal Society of New York, compiler of Free Press Anthology, . . . privately printed, for forensic uses, New York, 1911 copyright by the Author, 1911; Chapters 18, 19, 20, and 21 and authorities there cited.

Lord Camden, quoted in 3 Words and Phrases, p. 2069; Lord Andover in a speech in 1640, quoted in the Freedom of Speech and Writing, p. 94; Fortescue's Preface to his report, pp. 3-4; John Locke, quoted in Observations on the Nature of Civil Liberty, pp. 37-8; John Cartwright, in the English Constitution Produced, etc., pp. 136-7, 143, 276; Rev. C. C. Colton, in "Lacon," p. 83, Ed. of 1832; "The first American Democrat;" Blackstone's Com., Book III, Chapter 8; Sir Thomas Burdellt to His Constituents (1810), p. 15; 4 Parliamentary History, 115, 117, 118; U. S. v. Lamkin, 73 Fed. Rep. 463; Justice Brown of U. S. Supreme Court, 34 Am. Law Review, 322; The Liberty of the Press, by James Mill, from the 6th edition (1821) of the Encyclopaedia Britianica, supplement; State v. Loomis, 115 Mo. 307; 22 S. W. 350, 351; 21 L. R. A. 709.

2nd.  The statute is void because it conflicts with section 13 of our state Constitution (See page 47).  This constitutional guarantee of freedom of the press, section 13, is

violated whenever there is an artificial legislative destruction or abridgement of the greatest liberty consistent with an equality or liberty, in the use of the printed page as a means of disseminating ideas of conflicting tendency.

"The Judicial Destruction of the Freedom of the 'Press,'" in Government, for Dec., 1908; Albany Law Journal, Nov., 1908; "The Scientific Aspect of 'Due Process of Law,'" in American Law Review, for June, 1908; "Liberty of Conscience, Speech, and Press," in the Liberal Review, for Aug. and Sept., 1906; "Obscene" Literature and Constitutional Law, pages 11-23, inclusive.

3rd. The statute is void because it conflicts with section 14 of our state Constitution. The statute furnishes *no standard or test by which to differentiate the book that is "obscene" from that which is not,* because of which fact the definition of the crime is uncertain. "What is Criminally 'Obscene,'" proceedings XV, International Medical Congress, Lisbon, Portugal, April, 1906; Albany Law Journal, for July, 1906; "Legal Obscenity and Sexual Psychology," in The Medico-Legal Journal, for Sept., 1907 and the Alienist and Neurologist, for Aug., 1908; "Varieties of Official Modesty," in the American Journal of Eugenics, for Dec., 1907; Albany Law Journal, Aug., 1908; "Obscene" Literature and Constitutional Law, pp. 13-14.

(a) The first result of this uncertainty is that the statute herein involved, creates no certain or general rule of conduct for the guidance of citizens, and does not enable them to know if their proposed act is in violation of the statute, and therefore every conviction under said statute is without due process of law.

The fourth class of constructive crimes are those which do come within the actual and literal definition of the criminal statute, but where that predicates crime upon conduct which is only a constructive, and not a real and actually achieved material injury, to any living being, nor conditioned upon any imminent danger thereof, the existence of which is determinable by any known law of the physical universe. In such a case, the reality and material-

ity of the injury, which is an indispensable foundation of all criminal statutes, is entirely absent, except as a matter of legal fiction, and not as a material actuality described in the letter of the law. " 'Obscene' Literature and Constitutional Law," chapters XVIII, XIX, XX, XXI, XXII, and cases there cited.

4th. The statute is void because it conflicts with Section 16 of our state Constitution. The second result of this uncertainty of the statute is that every conviction under the said statute is always according to an *ex post facto* law or standard of judgment, especially created by the court or jury for each particular case.

A conviction and punishment under such circumstances is always by virtue of *ex post facto* legislation on the part of the court or jury, and is none the less unconstitutional because the accepted delegation of power to enact it was made before the conduct to be punished. All criteria of guilt must be found in a prior statute. "Obscene Literature and Constitutional Law," chapter XXIII, and cases there cited.

5th. The statute is void because it conflicts with section 26 of our state Constitution: "In all criminal prosecutions the accused shall have a right . . . to demand the nature and cause of the accusation. . . . This means that the accused must be informed not only of the facts claimed to have been offered, but also of the law, the criteria of guilt, by which those facts will be adjudged criminal. *United States* v. *Medical Supers,* 25 App. Cases D. C. 443; *Noonan* v. *State,* 1 Sm. & M. 562; *Murphy* v. *State,* 24 Miss. 590; *Garrard* v. *State,* 25 Miss. 469; *Riggs* v. *State,* 26 Miss. 51; *Norris* v. *State,* 33 Miss. 373; *Newcomb* v. *State,* 37 Miss. 383; *Williams* v. *State,* 42 Miss. 328; *Riley* v. *State,* 43 Miss. 397; *Thompson* v. *State,* 51 Miss. 353.

The statute does not define the crime; and it is so vague and uncertain that the defendant cannot possibly know the nature of the accusation by reading the statute. The

dividing line between what is lawful and what is unlawful cannot be left to conjecture. *U. S.* v. *Capital Traction Co.,* 34 App. Cases, D. C. 592.

6th. The statute is void because it conflicts with section 32 of our state Constitution. There was never any "obscene" literature at common law. The common law does not deal with mere constructive or psychological offenses; it deals only with overt acts. The common law deals with "obscenity," blasphemy, heresy, witch-craft, and constructive and psychological offenses in general. Will the supreme court be a party to the revival of these offenses by reading them into the law of the land of Mississippi? "Obscene" Literature and Constitutional Law, pp. 13-4, and chapter XIII; Constitutional Free Speech, defined and defended, Fourteenth Amendment to the U. S. Constitution.

1st. The statute is void because it conflicts with the Fourteenth Amendment to the United States Constitution. *State* v. *Payne,* 29 Pac. 787; *McCluskey* v. *Cromwell,* 11 N. Y. (1 Kern.) 593-602; *Gibbons* v. *Ogden,* 9 Wheat. 1, 6 Law Ed.`1; see also *Scott* v. *Sanford,* 19 Howard, 393, 15 Law, Ed. 691; *Reynolds* v. *U. S.,* 98 U. S. 162; *Boyd* v. *U. S.,* 616-622-625; *Carolina* v. *U. S.,* 199 U. S. 437; *Reynolds* v. *U. S.,* 98 U. S. 163; *Patterson* v. *Colorado,* 295 U. S. 454; 4 Bl. Com. 15; *In re License Cases,* 46 U. S. 504-583-592; 12 Law Ed. 256; *Comm.* v. *Alger,* 7 'Cush. 53, 85; *Leavenworth* v. *Miller,* 7 Kans. R., 501; *Reeves* v. *Corning,* 51 Fed. 177-785; 68 Central Law Journal, pp. 227, 234, Mch. 26, 1909; Central Law Journal, Mch. to June, 1910; "Obscene" Literature and Constitutional Law, chapter 11.

Perhaps there the issues were not as exhaustively treated as they might have been, yet the process is clearly enough illustrated. *Reynolds* v. *U. S.,* 98 U. S. 163. Lord Camden, quoted in 3 Words and Phrases, p. 2069; Lord Andover in a speech in 1640, quoted in the Freedom of Speech and Writing, p. 94; Fortescue's Preface to his Report, pp. 3-4; John Locke quoted in Observations on the Nature of Civil Liberty, pp. 37-8; John Cartwright, in the English Con-

stitution Produced, etc., pp. 136-7, 143, 276; Rev. C. C. Colton, in "Lacon," p. 83, Ed. of 1832; "The First American Democrat;" Blackstone's Com., Book III, chap. 8; Sir Thomas Burdette to His Constituents (1810), p. 15; 4 Parliamentary History, 115, 117, 118; *U. S.* v. *Lamkin,* 73 Fed. Rep. 463; Justice Brown of U. S. supreme court, 34 Am. Law Rev., 322. There cannot be "due process of law" unless there is "law." In any case where all the facts are known, there can be no "law" unless criteria of guilt are so certain that men of ordinary intelligence cannot err nor reach conflicting conclusions as to their criminality.

Due process of Law and Equality. The one essence of "law" and "due process of law" which has most often received judicial sanction is the proposition that there can be no law without equality as to all persons who are similarly situated with reference to the state of society. "The Liberty of the Press" (1821), pp. 23 to 55; "On Liberty of the Press," by James Mill in supplement to sixth edition of Ency. Britianica, 1821; reprinted by the Free Speech League, 1912, with introduction by Theodore Schroeder.

The Sixth Amendment. We may now proceed to relate our interpretation of freedom of speech to that provision of the Constitution which guarantees that persons accused of crime "shall be informed of the nature and cause of the accusation." This means that the accused must be informed not only of the facts claimed to have been offended, but also the law, the criteria of guilt, by which those facts must be adjudged criminal. In other words, he must be "informed by the law as well as by the complaint what acts or conduct are prohibited and made punishable." "In a criminal statute, the elements constituting an offense must be so clearly stated and defined as reasonably to admit of but one construction. The dividing line between what is lawful and unlawful cannot be left to conjecture." *U. S.* v. *Capital Traction Co.,* 34 App. Cases (D. C.), 592; *Czarra* v. *Medical Supers.,* 25 App. Cases (D. C.), 443, and other cases there cited; Holt and the Law of Libel, p. 37, Edition 1816; 15 Howell's State Trials, p. 1; The Revolu-

tion of 1688; The Origin of Its Principles. The Monthly
Law Magazine, July, 1830, Vol. 2, No. 6, p. 161; Aug.,
1838, Vol. 2, No. 7, p. 321; Sept., 1838, Vol. 2, No. 8, p. 477;
English Bill of Rights dated Feb. 13, 1688; *Booth* v. *Ry-
croft*, 3 Wisc. 183.

Before the Fourteenth Amendment, it was held that pre-
vious amendments imposed restrictions only upon federal
authority. Then the Fourteenth Amendment to the Con-
stitution withdrew even from the states all authority to de-
prive any one of "Liberty" without "Due Process of Law."
The question now is: What "Liberty" is thus protected
against even state abridgement? Obviously the Consti-
tution is the most important source of expressed informa-
tion as to what is meant by constitutional liberty. Neces-
sarily then, in the Fourteenth Amendment "Liberty" can
mean only those fundamental liberties (and must have
been intended to include them all) which by previous
amendments had been deemed sufficiently important to be
expressly withdrawn from Federal authority. *State* v.
*Loomis,* 115 Mo. 307, 22 S. W. 350-351; 21 L. R. A. 789.
(Not forgetting the fifth which already embodied the same
general language). But the liberties guaranteed by earlier
amendments to the Federal Constitution are those which
were synthetized in the hereinbefore-stated general criteria
of constitutional liberty. It therefore follows that by
virtue of the Fourteenth Amendment the above stated
criteria of constitutional liberty are controlling even as to
the conflict of state legislation with the Federal Consti-
tution.

2nd. The statute is void because it conflicts with sec-
tion 13 of our state Constitution. "Obscene" Literature
and Constitutional Law, pp. 39, 239; Constitutional Free
Speech Defined and Defended; Chapter VIII, "Black-
stone, No Authority on Free Speech;" Chapter IX, "Black-
stone's Critics;" Chapter X, *"U. S. A.* v. *Blackstone,"* and
the cases cited in these chapters.

3rd. The statute is void because it conflicts with section
14, of our state Constitution. Because of the uncertainty

or total absence of criteria of guilt, this statute cannot constitute "due process of law." Mence on Libel, p. 312; 2 Coke's Institutes, 527, 577, 587.

There cannot be "due process of law" unless there is "law." In any case where all the facts are known there can be no "law" unless the criteria of guilt are so certain that men of ordinary intelligence cannot err nor reach conflicting conclusions as to their criminality. "Due process of law" and the equality required thereby are violated by this statute. 4th. The statute is void because it conflicts with section 16 of our state Constitution. *Fairbank* v. *United States,* 181 U. S. 283, 294; 8 Wallace, 123. 5th. The statute is void because it conflicts with section 26, of our state Constitution. 6th. The statute is void because it conflicts with section 32 of our state Constitution. *U. S.* v. *Harman,* 38 Fed. 828.

Origin of the Mississippi "Obscenity" statute. As the Mississippi "obscenity" statute did not originate in the common law and as "obscene" literature was never the object of a criminal statute in our state until the present one was enacted in 1884, we may inquire whence it came and whither is it bound. It came from the Vatican at Rome. It is in direct line with the law of the Roman Church. *Reg.* v. *Hicklin* (L. R.), 3 Q. R. 360; *Price* v. *U. S.,* 165 U. S. 311.

What is "obscenity," anyhow?—It is only a superstition. It has no more objective existence than has witchcraft. Witchcraft ceased to exist when men ceased to believe in witches; and so "obscenity" will cease to exist when men cease to believe in it. This is a scientific truth which cannot be successfully controverted. A scientific truth which cannot be overturned by a popish law. The scientific truths established by Copernicus and Gallileo, for example. To the pure all things are pure, the Mississippi Comstock Law to the contrary notwithstanding.

*D. L. Enochs,* assistant attorney-general, for the state.

The legislature of the state of Mississippi has full power to pass such a statute as that here complained of, unless prohibited by the state or Federal Constitutions. The right is derived from the police power of the state, which is the power inherent in the Government to enact laws, within constitutional limits, "to promote order, safety, health, morals, and general welfare of society." 12 C. J., 904. Now learned counsel for the appellant contends that this statute is in violation of sections 13, 14, 16, 26, and 32 of the state Constitution, and section 1 of the Fourteenth Amendment of the Federal Constitution is the one providing that freedom of speech and of the press shall be held sacred. But as set forth on page 313 of the 8th volume of Ruling Case Law: "The constitutional liberty of speech and the press simply guarantees the right freely to utter and publish whatever the citizens may desire and to be protected in so doing, provided always that such publications are not blasphemous, obscene, and scandalous in their character so that they become an offense against the public." I shall not here set out the authorities upon which the text in R. C. L. is based, but shall content myself with referring the court to the note at the bottom of the page where the text is found.

Section 14 of our state Constitution is the section that provides that no person shall be deprived of life, liberty, or property except by due process of law. This provision of our state Constitution is similar to a part of the Fourteenth Amendment of the Federal Constitution. But the Fourteenth Amendment to the Federal Constitution, as stated in 12th Corpus Juris, 928, "does not deprive the states of their police power, however; and, subject to the limitations therein, the states may continue to exercise their police powers as fully as before the adoption of the amendment." I shall not here set out the authorities cited by the publishers of Corpus Juris in support of the text, but refer the court to the note at the bottom of the page on which the text is found.

So that, if this statute falls within the beneficient rule just quoted from Corpus Juris, it does not fall within the

prohibition of either section Fourteen of the state Constitution, or the Fourteenth Amendment of the Federal Constitution. Section 16 of the state Constitution is the section that prohibits the passage of *ex post facto* laws. The point insisted on here is that a person cannot know whether the law pronounces the writing he is selling "obscene" until he is convicted for selling it. In other words, under the statute as written, he insists that it cannot be determined by the individual in advance whether he will violate the statute if he sells a certain pamphlet or other writing, and that therefore the law is an *ex post facto law*. It is true that the legislature did not undertake to define the meaning of the word "obscene." The word is a descriptive word itself of the character of the pamphlet or writing prohibited to be sold. It would be impracticable, if not impossible, for the legislature to undertake to imagine and set out just what kind of words, or combination of words, and setting of such words and thoughts produced by same in the mind of the reader would be obscene. In my opinion, it would be impossible for the legislature to do this, and certainly unwise, for then it would be possible to evade the letter of the law, and thereby escape merited punishment, although coming within the spirit of the law and producing the evil results sought to be prevented by the law. The word "obscene" is an English word, and has a sufficiently definite meaning that no right-minded man could possibly be ensnared thereby. There is no use for any one to take chances by driving with one-half the tire of his vehicle over the precipice. The better plan is to drive as far from the precipice as possible. Then one need not be concerned as to the firmness of the edge of the precipice, and as to the point at which it will crumble and give way under his weight. The rule of construction of such statutes is admirably laid down on page 312 of the 8th volume of Ruling Case Law.

Section 26 of our state Constitution is the section that provides that in all criminal prosecutions, the accused shall have a right to demand the nature and cause of the accusa-

tion.  Opposing counsel contends that the statute violates
this section in that it does not set out what shall be con-
sidered "obscene."  However, the affidavit very clearly sets
out that the obscene literature the appellant is charged
with having sold is the November, 1921, issue of "The
Wampus Cat."  The appellant is therefore very fully ad-
vised as to the obscene literature he is charged with selling.
What I have said in reference to section 16 applies equally
here, and will not be repeated.

Section 32 of our state Constitution is the section pro-
viding that the enumeration of the rights in the Constitu-
tion shall not be considered to deny others retained by and
inherent in the people.  The point insisted on here by op-
posing counsel is that the Constitution conferred no au-
thority upon the legislature to enact such a statute as is
here complained of, but that the right to publish and sell
obscene literature was specially retained by the people.
True, opposing counsel does not express it that way in so
many words, but in substance and to that effect, because
that is the thing he is trying to uphold.  Opposing counsel
wholly misconceives section 32 of our state Constitution.
The rights here mentioned in the Constitution, and which
are inherent in the people, are to be exercised by them
through their legislature.  The legislature is nothing but
the assembling of the people, by representatives in accord-
ance with the Constitution, to exercise the various powers
vested in them.  This section is not a limitation upon the
right of the people to exercise their inherent powers, acting
through their legislature, but is rather an expression of
their right to do so.  By no stretch of imagination, it seems
to me, can this section be considered to prohibit the people
through their legislature from passing a statute prohibit-
ing the sale of obscene and indecent literature.

Opposing counsel complains that the statute is also in
violation of the Fourteenth Amendment which prohibits
any state to make or enforce any law which shall abridge
the privileges or immunities of citizens of the United
States.  What I have said in a discussion of Section Four-
teen of the state Constitution applies equally here, and

will not be repeated. No person has the privilege of corrupting the morals of his fellow citizens, nor has he any immunity from punishment therefor. Therefore, there is no privilege or immunity of any citizen of the United States that is abridged by section 1292 of the Mississippi Code of 1906. I do not deem it necessary to discuss this particular point any further.

Opposing counsel says that it was not a crime at common law to publish obscene literature, and that this statute is of Roman Catholic origin. And while it is immaterial as to how it originated, and therefore need not be here discussed, yet in order to preserve the glory of the common law, I desire here to refer to page 312 of the 8th volume of Ruling Case Law: Opposing counsel does not undertake to make a point that the affidavit is insufficient because it does not set out therein the language of the November, 1921, issue of "The Wampus Cat," or because it has not a copy of the same attached as an exhibit.

If the court however believe the publication should have been set out in the affidavit or attached to it, I desire to call the court's attention to the fact that the publication complained of it attached to the brief of the appellant, and since it is the desire of the appellant to have the constitutionality passed upon by the court, I am sure that opposing counsel will join me in requesting the court to consider the pamphlet attached to his brief as set out in the affidavit, or attached to the affidavit, whichever way the court should believe it should have been done.

I therefore trust the court will not permit any technical deficiency in the affidavit, if any there be to prevent the court from passing upon the validity of this statute.

I respectfully submit that the case should be affirmed. Respectfully submitted.

SYKES, J., delivered the opinion of the court.

From a judgment of the circuit court finding the defendant guilty, and imposing a nominal fine against him, this appeal is prosecuted.

Omitting the formal parts of the affidavit upon which this prosecution rests, it reads as follows:

"Did then and there sell, lend, give away, or show, or had in his possession with intent to sell, lend, give away, show, or advertise, or otherwise offered for loan, gift, sale, or distribution, a certain obscene or indecent book, writing, paper, picture, drawing, or photograph or a certain article of indecent or immoral use, to-wit, the November issue of the Wampus Cat, against the peace and dignity of the state of Mississippi."

This affidavit practically follows the language of the first part of section 1292 of the Code of 1906 (section 1025, Hemingway's Code). A plea of *nolo contendere* was entered in the justice of the peace court whereupon the justice imposed a fine upon the appellant, and he appealed to the circuit court.

In the circuit court the defendant interposed a demurrer to this affidavit. Briefly stated, the demurrer challenges the constitutionality of this section of the Code as being violative of the Fourteenth Amendment to the Constitution of the United States, and as being also in conflict with sections 13, 14, 16, 26, and 32 of the Constitution of the state of Mississippi. The learned circuit judge overruled the demurrer, the defendant interposed a plea of *nolo contendere,* whereupon a nominal fine was imposed against him.

While some of the early law writers doubted whether or not obscene libels were offenses at common law, 2 Bishop's New Criminal Law, section 943, thus states the rule:

"The publication of any writing tending to corrupt the public morals is indictable. Hawkins, indeed, doubts whether such a writing, 'full of obscene ribaldry, without any kind of reflection upon any one,' is so; but whatever question there may have been at the time he wrote, 'it is now,' in the language of Starkie, 'fully established that any immodest and immoral publication, tending to corrupt the mind and to destroy the love of decency, mor-

ality, and good order is punishable in the temporal courts'
of England, and in the common-law criminal tribunals of
our country."

This statute is an exercise of the police power of the
state, which power, broadly speaking, is that to promote
order, safety, health, morals, and the general welfare of
society. 12 C. J., 904. The right of freedom of speech
guaranteed by the two Constitutions is thus well stated in
8 R. C. L., p. 313:

"The constitutional liberty of speech and of the press
simply guarantees the right freely to utter and publish
whatever the citizen may desire and to be protected in so
doing, provided always that such publications are not blas-
phemous, obscene, and scandalous in their character, so
that they become an offense against the public, and by their
malice and falsehood injuriously affect the character, rep-
utation, or pecuniary interests of individuals."

In 12 C. J., p. 928, it is stated that the Fourteenth Amend-
ment to the Federal Constitution "does not deprive the
states of their police power, however; and, subject to the
limitations expressed therein, the states may continue
to exercise their police powers as fully as before the adop-
tion of the amendment." Again, on page 929 of the same
work:

"In order that a statute or ordinance may be sustained
as an exercise of the police power, the courts must be able
to see that the enactment has for its object the prevention
of some offense or manifest evil or the preservation of the
public health, safety, morals, or general welfare, that there
is some clear, real, and substantial connection between the
assumed purpose of the enactment and the actual provi-
sions thereof, and that the latter do in some plain, appre-
ciable, and appropriate manner tend toward the accom-
plishment of the object for which the power is exercised.
The mere restriction of liberty or of property rights cannot
of itself be denominated 'public welfare,' and treated as a
legitimate object of the police power."

In speaking of the liberty of the press Cooley on Constitutional Limitations (7th Ed.) bottom of page 604, says: "The constitutional liberty of speech and of the press, as we understand it, implies a right to freely utter and publish whatever the citizen may please, and to be protected against any responsibility for so doing, except so far as such publications, from their blasphemy, obscenity, or scandalous character may be a public offense, or as by their falsehood and malice they may injuriously affect the standing, reputation, or pecuniary interests of individuals."

In the case of *State* v. *Van Wye,* 136 Mo. 227, 37 S. W. 938, 58 Am. St. Rep. 627, the rule as laid down by Judge COOLEY is reiterated practically in the same language, and that court adds: That this "constitutional protection shields no one from responsibility for abuse of this right. To hold that it did would be a cruel libel upon the Bill of Rights itself. . . . Equally numerous and strong are the decisions that obscene publications are without the protection of this provision of our Constitution."

This opinion then quotes from *U. S.* v. *Harmon* (D. C.), 45 Fed. 414, wherein it is said: "Liberty in all its forms and assertions in this country is regulated by law. It is not an unbridled license. Where vituperation or licentiousness begins, the liberty of the press ends."

In this opinion numerous authorities are cited upholding the constitutionality of statutes of this character. See, also, *State* v. *McKee,* 73 Conn. 18, 46 Atl. 409, 49 L. R. A. 542, 84 Am. St. Rep. 124. It will also be noted that federal statutes, making it a crime to send obscene matter through the mails, have been held constitutional. *Ex parte Jackson,* 96 U. S. 727, 24 L. Ed. 877; *In re Rapier,* 143 U. S. 110, 12 Sup. Ct. 374, 36 L. Ed. 93; *Konda* v. *U. S.,* 166 Fed. 91, 92 C. C. A. 75, 22 L. R. A. (N. S.) 304.

Without specifically entering into an elaborate discussion of the sections of the state Constitution alleged to be violated, the same reasons apply to these sections as those relating to the Federal Constitution. It is, however, necessary to notice the contention of appellant to the effect that this statute charges no crime, because the word "obscene"

has no specific definite meaning. We must, however, differ with counsel upon this question. Quoting from 3 Words and Phrases, Second Series, p. 672:

"The word 'obscene,' when used, as in the statute, to describe the character of a book, pamphlet, or paper, means containing immodest and indecent matter, the reading whereof would have a tendency to deprave and corrupt the minds of those into whose hands the publication might fall, whose minds are open to such immoral influences"— citing *U. S.* v. *Moore* (D. C.), 129 Fed. 159, 161; *U. S.* v. *Clarke* (D. C.), 38 Fed. 732.

Again: "The word 'obscene' means offensive to senses; repulsive; disgusting; foul; filthy; offensive to modesty or decency; impure; unchaste; indecent; lewd"—citing *Holcombe* v. *State,* 5 Ga. App. 47, 62 S. E. 647.

See other definitions of like character therein contained.

We therefore conclude that this statute is not violative of either the state or federal Constitutions. The sufficiency of the affidavit was not questioned in the lower court in the demurrer (except as to its constitutionality) or by motion to quash. The court of its own motion has considered whether or not a conviction may be sustained upon this affidavit. We think, though there are several charges made in the disjunctive in this affidavit, it relates to but one transaction; that, though perhaps defectively stated, the defendant was informed of the nature and cause of the accusation made against him, and that he cannot complain after judgment of the court.

If timely objection had been made it would perhaps have been the duty of the state to amend the affidavit by more fully describing the alleged obscene matter which appears to be the whole or a part of a publication called the Wampus Cat, and to have either set out in full the obscene matter therein, or allege that it was too obscene to be spread upon the records of the court. *State* v. *Zurhorst,* 75 Ohio St. 232, 79 N. E. 238, 116 Am. St. Rep., 724, 9 Ann. Cas. 45, and notes. This affidavit was amendable under section 1511 of the Code of 1906 (section 1269, Hemingway's Code).

And is therefore cured by section 1413 of the Code 1906. *Norton* v. *State*, 72 Miss. 128, 16 So. 264, 18 So. 916, 48 Am. St. Rep. 538. The following language of the opinion of the court in *Cannon* v. *State*, 75 Miss. 364, 22 So. 827, is especially applicable:

"The indictment charges two distinct offenses, but the two counts evidently rest upon one transaction. While the counts are for independent offenses, the offenses do not differ in character or degree, the punishment for each being the same. While it is bad practice to charge different and independent offenses in one indictment, yet we cannot reverse on that account in this case, for the reason that now, looking back through a completed trial, we can see that the appellant was not actually prejudiced by the action of the court in overruling the demurrer to the indictment."

See, also, *Triplett* v. *State*, 80 Miss. 379, 31 So. 743; *Brown* v. *State*, 81 Miss. 137, 32 So. 952.

It was proper for the court to enter judgment against the defendant upon his plea of *nolo contendere*. In 1 Bishop's New Criminal Procedure, section 802, it is stated that:

"This plea is the defendant's declaration in court that he will not contend with the prosecuting power. It is pleadable only by leave of court, and in light misdemeanors. The difference between it and guilty appears simply to be that, while the latter is a confession binding the defendant in other proceedings, the former has no effect beyond the particular case. It simply justifies the court in imposing its sentence."

The judgment of the lower court is affirmed.

*Affirmed.*

ETHRIDGE, J. (dissenting). I am unable to agree with the conclusion reached in the main opinion. In my opinion section 1025, Hemingway's Code (section 1292, Code of 1906) can be held constitutional only upon condition that it is expanded by the construction or aided by the common law, and the rule is that, whenever a statute must be en-

larged by construction or aided by the common law, all of the elements constituting the offense must be alleged in the indictment in order to comply with section 26 of the Constitution of the state, giving an accused person the right to the nature and cause of the accusation against him, and to constitute due process of law under the Fourteenth Amendment to the Constitution of the United States.

Section 1025, Hemingway's Code (section 1292, Code of 1906), reads as follows:

"A person who sells, lends, gives away, or shows, or has in his possession with intent to sell or give away, or to show or advertise, or otherwise offers for loan, gift, sale, or distribution, any obscene or indecent book, writing, paper, picture, drawing, or photograph, or any article or instrument of indecent or immoral use, or who designs, copies, draws, photographs or otherwise prepares such a book, picture, drawing or other article, or writes or prints, or causes to be written or printed, a circular, advertisement, or notice of any kind, or gives information orally, stating when, where, how, by whom, or by what means such an indecent or obscene article or thing can be purchased or obtained is guilty of a misdemeanor, and, on conviction, shall be punished by a fine of not over five hundred dollars or imprisonment in the county jail for not more than six months, or both."

The affidavit in this case followed the language of the section, and was specifically demurred to because the law upon which it was founded was in conflict with section 26, and also in conflict with the Fourteenth Amendment. In my opinion an indictment in the language used in the present case wholly fails to inform the accused of the accusation against him. The question of due process of law, and what it takes in statutes to constitute due process of law, was passed upon in *U. S.* v. *Cohen Grocery Co.,* 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045. In that case the court passed upon an act of Congress known as the Lever Act, and the appellee was indicted for a violation of the act. The court held that the act was in con-

flict with the Fifth and Sixth Amendments to the Constitution of the United States, which sections prohibit depriving a person of his life, liberty, or property without due process of law. In the course of the opinion the court said, after quoting from the act:

"Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below, in its opinion, to the effect that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury."

The court cites a number of cases in support of its holding that the statute must define the offense, and not leave the offense to the judgment of the court and jury. Among the cases so cited with approval is *U. S.* v. *Capital Traction Co.,* 34 App. D. C. 592, 19 Ann. Cas. 68. In the said case of *U. S.* v. *Traction Co.,* at page 598 of 34 App. D. C., at page 70 of 19 Ann. Cas., the court in discussing the due process of law element used the following language:

"In a criminal statute the elements constituting the offense must be so clearly stated and defined as to reasonably admit of but one construction. Otherwise there would be lack of uniformity in its enforcement. The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently

choose, in advance, what course it is lawful for him to pur-
sue.  Penal statutes prohibiting the doing of certain things,
and providing a punishment for their violation, should not
admit of such a double meaning that the citizens may act
upon the one conception of its requirements and the courts
upon another.  As was said in *U. S.* v. *Reese,* 92 U. S. 214,
23 U. S. (L. Ed.) 563: 'If the legislature undertakes to de-
fine by statute a new offense, and provide for its punish-
ment, it should express its will in language that need not
deceive the common mind.  Every man should be able to
know with certainty when he is committing a crime.
. . . It would certainly be dangerous if the legislature
could set a net large enough to catch all possible offenders,
and leave it to the courts to step inside and say who could
be rightfully detained and who should be set at large.  This
would, to some extent, substitute the judicial for the legis-
lative department of the government.'

"Penalties cannot be inflicted at the discretion of a jury.
Before the citizen can be deprived of his liberty or a corpo-
ration of its property by the imposition of fines, the crime
must be clearly defined by the lawmaking power.  If the
Congress has power to declare it a crime for the street rail-
way companies in the District of Columbia to operate cars
in a crowded condition, it must, in order to impart validity
to the law, declare, with certainty, what constitutes, under
the statute, a crowded car.  This it has totally failed to do."

Looking to the common law for the test of obscenity we
find in 29 Cyc., p. 1319, the following:

"The test which determines the obscenity or indecency
of a publication is the tendency of the matter to deprave
and corrupt the morals of those whose minds are open to
such influences, and into whose hands such a publication
may fall.  The question does not depend upon its being true
or false.  So a proper test of obscenity in a painting or statue
is whether its motive, as indicated by it, is pure or impure,
whether it is calculated to excite in a spectator impure
imaginations, and whether the other incidents and quali-
ties, however attractive, are merely accessory to this as the
primary or main purpose of the representation."

At page 1320, under the caption of punishment, we find the following: "Where the offense of using obscene language is statutory, an indictment thereof must aver every fact which the statute declares a constituent of it. An in-indictment for using obscene language in the presence of a female need not show that it was heard by the female. If the words charged are not obscene *per se*, the indictment must show by extrinsic averments that they were used in that sense, and so understood by the female."

In 2 Wharton's Criminal Law (10th Ed.), section 1432, p. 280, after discussing the subject generally, the author says: "But in all these cases the indictment must aver, and the proof must show, exposure and offense to the community generally; as mere private lewdness or indecency is not indictable as a nuisance at common law."

The affidavit in the present case nowhere charges that the publication was indecent in the common understanding and acceptation of the public. The statute must be construed so as to make it stand the constitutional test. The person may be made guilty of a crime when his conduct shocks the common decency of the community, but he cannot be held guilty of mere violation of individual idiosyncrasies or prudery. There is a broad field in which individual judgment differs as to what is indecent and what decent. The decency that may be protected by a statute is that which the preponderant majority of minds agree with. Under all reasonable tests the affidavit ought to set forth specific acts which make out the offense, and not mere conclusions. While the language of the statute is general in its terms, when you come to allege the offense specific acts should be alleged, which facts on their face show a violation of the law. Whether the matter set out in the indictment is obscene or not is a question of law primarily for the court to decide as a matter of law. *McNair* v. *People*, 89 Ill. 441; *State* v. *Burwell*, 86 Ind. 313; *Hummel* v. *State*, 10 Ohio Dec. 492; *Abendroth* v. *State*, 34 Tex. Cr. R. 325, 30 S. W. 787; *State* v. *Hanson*, 23 Tex. 232. In a case note to *State* v. *Zurhorst*, 9 Ann. Cas. at

page 47 the annotator, in discussing this question after
quoting some authorities which hold that the language of
the statute may be used, used the following language:

"But on the other hand it has been held that the obscene
language should be set out *in haec verba,* or that a good
excuse should be given for not doing so. *State* v. *Burwell,*
86 Ind. 313.   In *Hummel* v. *State,* 10 Ohio Dec. 492, 8
Ohio N. P. 48, it is held that an averment in an indictment
charging the defendant with having used 'obscene and li-
centious language' states a mere conclusion of the pleader;
that facts descriptive of the crime should be alleged; and
that while it is not necessary to set out the exact words
used where it is alleged that the language is 'unfit for al-
legation herein,' enough of the language must be set out
to show that a crime has been committed.   And in *Steuer*
v. *State,* 59 Wis. 472, 18 N. W. Rep. 433, wherein the
crime charged was the use of abusive and obscene language
tending to provoke a breach of the peace, the court stat-
ed that the words should have been set out.   An indict-
ment is insufficient where the language charged to have
been uttered is not such as to convey licentious or obscene
meaning, and there is no averment showing the connec-
tion in which the words were uttered or that the words
have any local or provincial meaning rendering them ob-
scene; *State* v. *Coffing,* 3 Ind. App. 304, 29 N. E. Rep.
615."

In *Commonwealth* v. *Wright,* 139 Mass. 382, 1 N. E.
411, in discussing proper identification of the matter by
means of description in the indictment, it is said:

"While the indecent publication need not be set forth
at length, and it is sufficient in the indictment to allege,
as an excuse for not doing so, its scandalous and obscene
character, it must be identified by some general descrip-
tion which shall show what the paper is which the de-
fendant is charged with publishing.   Unless this is done, it
is obvious that the defendant is not informed, with such
precision as the law requires, of the offense charged against
him, and may be entirely deceived in regard to the paper

to which the obscene character is attributed. Nor would the indictment afford the protection to the defendant to which he is entitled, should he be subsequently indicted for the same offense."

The rule seems generally to be that the general purport and tenor of the language should be set forth or it should be set forth *in haec verba.* Or it must be alleged in the indictment or affidavit that the matter is too voluminous or too scandalous to be set out in the record of the court. At page 48 of the case note to 9 Ann Cas., at the bottom of the second column and the top of the first column on page 49, the editor says:

"But when it appears that the alleged obscene publication is a book and that it is impracticable to set it out in full, it is not enough to describe the book generally, where only certain parts are relied upon to sustain the charge. Thus, in *Com.* v. *McCance,* 164 Mass. 162, 41 N. E. Rep. 133, the court said: 'In the present indictment it cannot be known that the defendant has not been indicted upon evidence relating to certain parts of the book, and convicted upon evidence relating to other parts. . . . Printed words always can be set out according to their tenor. If this is not done because it is alleged that the language is too indecent to be placed on the records of the court, . . . the law requires that the language complained of should be identified by such a description or reference that it may be known that the indictment was found upon the language which is put in evidence and relied on at the trial. If the obscene language complained of appears only in some passages in a book, the rest of which is free from obscenity, the book as a whole should not be presented, but only the book as containing these obscene passages.' "

In an analogous statute our own court in *Stark* v. *State,* 81 Miss. 397, 33 So. 175, held that, where the indictment did not set out the element of the offense named in the statute, it was void upon its face.

In *Walton* v. *State,* 64 Miss. 207, 8 So. 171, which was a prosecution for profanely swearing or cursing in a pub-

lic place, it was held that the indictment must set out the profane language used, and it was not sufficient to pursue the language of the statute. See, also, *Finch* v. *State*, 64 Miss. 461, 1 So. 630; *Harrington* v. *State*, 54 Miss. 490.

It is said in the majority opinion that the affidavit was amendable under section 1269, Hemingway's Code (section 1511, Code of 1906). The complete answer to this is there was no effort to amend it in the circuit court. Of course, under this section it could have been amended so as to legally and validly charge the offense intended to be denounced by section 1025, Hemingway's Code. This section is in aid to the state here, and the affidavit was challenged because it did not comply with section 26 of the Constitution. The publication about which the appellant was charged and convicted is not attached to the affidavit, nor is it made a part of the record, and the affidavit nowhere states in what particular the publication was obscene or indecent. There was nothing before the court from which the court could judge as to whether or not the language of the publication fell within the condemnation of the statute. The court could not know what the facts were. It could only pronounce judgment upon the legal conclusions charged in the affidavit. No specific passage is referred to or described, and there is nothing save the affidavit upon which the court can pronounce judgment. The appellant has made the publication an exhibit to his brief, but that cannot be considered judicially here. It illustrates, however, an argument against the affidavit because much of the matter in there is free from any objection, and all the matter relied on in argument is susceptible of more than one construction. Under this publication, if we could consider it, one juror might convict for one passage and another for another, and no two men agree upon the same charge of obscenity or the same words relied on to constitute obscenity, while all might, exercising their own individual judgment and test, agree on a common verdict of guilty, which is wholly foreign to any legal idea of judicial proceeding and due process of law.

ANDERSON, J., concurs in this dissent.