SCARBROUGH *v.* STATE.

In Banc. Dec. 13, 1948.

(37 So. (2d) 748)

W. F. Latham, for appellant.

490

**R. O. Arrington**, Assistant Attorney General, for appellee.

**McGehee, J.**

The conviction of the defendant, Clyde Scarbrough, for the crime of burglary was not had as a result of a fair and impartial trial, even though there was an issue of fact to be properly submitted to the jury as to whether corporal punishment was inflicted on the accused after he had accommodated the officers by making a free and voluntary confession or whether it was inflicted immediately prior thereto.

During the month of October, 1947, a store building in the Town of Quitman, where the defendant resided, was burglarized during the nighttime, and some shirts,

pants, and cartons of cigarettes were stolen. As would naturally be expected, there were no eye witnesses to the burglary. None of the stolen goods were ever found in the possession of the defendant. At that time, his nephew was in jail at Quitman for having stolen a radio. The sheriff of the County placed the defendant under arrest during the day following the burglary, but he was released from custody during that same day. It is not clear as to which of these two spearate and distinct offenses he was then accused of.

About two weeks later, the city marshal, his son, and the night marshal, took the defendant in custody one night and carried him in an automobile to the county courthouse. These two officers testified that when they arrived there they talked to the defendant in the car about the burglary before taking him up into the courtroom and thence to jail; that he freely and voluntarily admitted in the car that he had burglarized the store, stolen the goods in question and had traded them for whiskey to a named individual. None of the goods were shown to have been found in the possession of such individual.

The city marshal testified that after they went into the courthouse, the defendant retracted his statement as to who he traded the goods to for whiskey, and that he then struck the defendant a time or two with a "slapper" made of leather, like two pieces of wagon lines; that he did this when the defendant had thus changed his statement from what he had said while in the car; and, it was shown that a written confession of the burglary was signed in the courthouse by the defendant using an X mark, but this writing was not offered in evidence, evidently because it was signed after the defendant had been punished. The night marshal heard the blows from an adjoining room and testified that while the defendant was in the courtroom he was well behaved in his attitude toward the other officer.

The prosecution relied upon the confession which is claimed to have been made in the car freely and voluntarily before the punishment was administered, and also upon a subsequent statement alleged to have been freely and voluntarily made to the constable of the district, on the street, during the daytime.

The defendant testified that after he was taken into custody by the day and night marshals, and while they all were in the car, he was struck by the son of the day marshal with a blackjack, and that they then questioned him in regard to the radio which had been stolen on a different occasion than when the store was burglarized, and that when he was questioned following the blow struck by the son he did not admit any connection with the burglary, until the blows were thereafter inflicted by the city marsal in the courtroom; that he then confessed that he committed the burglary, but that his confession in that behalf was untrue.

It was a question for the jury as to whether or not the defendant was punished after he had already confessed to the burglary. However, some of the Judges are of the opinion that under the case of White v. State, 129 Miss. 182, 91 So. 903, 24 A.L.R. 699, the confession of the burglary, whether immediately before or immediately after the blows were struck in the courthouse, was so closely connected with what transpired in the car as to render the confession involuntary. Whereas, the other Judges are of the opinion that the case at bar is distinguishable on its facts from those involved in the White case, supra, since in that case the accused had been taken into a store building to the corpse of the person whom he was suspected of having killed, and made a confession under more threatening circumstances than prevailed in the automobile where the defendant in the case is alleged to have first made the confession. On this point see 20 Am. Jur., page 449, and particularly the last statement contained in Section 523 of the said text. The two

officers denied that he was struck· in the car, but the son of the day marshal, who is alleged to have struck the defendant with a blackjack in the car, was not introduced as a witness.

Upon the trial the prosecution was able to get before the jury the clear intimation that the nephew of the defendant had informed the officers that the defendant was implicated with him in the theft of the radio. This was done over the objection of the defendant and in disregard of the trial court's ruling in sustaining such objection. The witnesses appeared eager to tell that the defendant had helped to steal the radio, and they repeatedly made mention of such fact in their testimony.

It is permissible when one accused of crime has taken the witness stand in his own behalf for the prosecution to question him in regard to previous convictions of crime, but but is not competent for the State, in presenting its case in chief, to prove that a defendant has been convicted or is guilty of other crimes wholly disconnected with, and having no direct bearing on, the case under investigation. Nor is it competent for an officer, in response to leading questions of the prosecuting attorney, to testify that an accused was sassy or impudent to the officers as a justification for inflicting corporal punishment on him, where such officer has testified independently of such claim that he struck the accused because he was trying to retract statements made immediately before being struck. To prove that a defendant who belongs to the colored race was impudent to the officers is calculated to be as highly prejudicial to him as almost any other fact or circumstance in a case.

After the city marshal had volunteered the statement that the defendant "was implicated in the radio stealing, too," and the Court had sustained an objection thereto, the witnesses continued to get it before the jury that the defendant had stolen the radio, based on hearsay statements of his nephew who was in jail. For instance,

a witness stated, ''We questioned him. His nephew had done told us . . .'' Then an objection was made as to ''what somebody told us'' and the objection was overruled. The witnesses thereafter continued throughout the trial to tell about the defendant having stolen a radio and to inform the jury that they ''picked up'' the defendant because of what his nephew 'had told them instead of introducing the nephew as a witness, if indeed his testimony as to this separate offense would have been competent if called as a witness.

██ ██ This is not one of those cases for the application of the rule that a conviction will be affirmed unless it appears that another jury could reasonably reach a different verdict upon a proper trial than that returned on the former one, but rather it is a case where the constitutional right of an accused to a fair and impartial trial has been violated. ██ ██ When that is done, the defendant is entitled to another trial regardless of the fact that the evidence on the first trial may have shown 'him to be guilty beyond every reasonable doubt. The law guarantees this to one accused of crime, and until he has had a fair and impartial trial within the meaning of the Constitution and Laws of the State, he is not to be deprived of his liberty by a sentence in the state penitentiary.

In the instant case, the issue was whether or not the defendant burglarized the store in question, and not whether he had stolen a radio on a former occasion or had been ''sassy and impudent'' to the officers in denying his guilt, or in trying to change the alleged confession.

On the cross examination of the defendant, an effort was repeatedly made by the prosecution to compel the said accused to state whether or not the officers had committed perjury at the risk of their being sent to the penitentiary when they testified that the punishment was inflicted on the defendant after had made a free and voluntary confession, instead of before the making of such confession as contended by the defendant.

In the case of Fisher v. State, 145 Miss. 116, 110 So. 361, 365, this Court quoted from the case of Hampton v. State, 88 Miss. 257, 40 So. 545, 117 Am. St. Rep. 740, the following language: ''What is a fair trial? Perhaps no precise definition can be given it, but it certainly must be one where the accused's legal rights are safeguarded and respected.'' And neither shall we undertake to define a fair and impartial trial, since it is sufficient to say that the defendant in the instant case did not have such a trial

Reversed and remanded.