## Spears *v.* State

No. 43455 May 17, 1965 175 So. 2d 158

*H. T. Carter,* Columbus, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

BRADY, TOM P., J.

This is an appeal from the Circuit Court of Attala County, where the appellant was indicted, tried and convicted for using obscene, indecent language over the telephone, in violation of Mississippi Code Annotated section 2291.5 (Supp. 1964), as enacted at the 1964 regular session of the Legislature of Mississippi. The appellant was sentenced to serve two years in the state penitentiary. From this judgment and sentence the appellant appeals.

Briefly, the pertinent facts in this case are these: On August 10, 1964, at approximately two o'clock in the afternoon, Mrs. W. S. Fowler, when her husband was absent, and while working at the Dr. Pepper and Seven-Up Bottling Company in Kosciusko, Mississippi, which is operated by Mr. Fowler, received a telephone call from an unidentified and unknown man who made a very vulgar, obscene, and indecent proposal to her. She demanded to know who was calling but the man refused to identify himself. Because of a prearranged plan entered into several weeks before between Mr. and Mrs. Fowler and another married couple of Kosciusko, she agreed to meet the caller who had made the insulting proposition to her, stating that she could not meet him that night, but that the following day and night her husband would be out of town and she could meet him on a certain road leading to the Moose Club, at 8:00 P. M.

Upon her husband's return to the plant she told him about the conversation and immediately he called the sheriff. Plans were made so that the sheriff could apprehend the caller. On the designated night, because of a storm, she did not meet him, but after it had subsided he again called her while she was in her home and she invited him to come to the house, which he did. He entered the house by a rear door and went into the kitchen where Mrs. Fowler was working, and she went

out of the kitchen into the dining room, where her husband and the sheriff were waiting, and on into her bedroom. When he entered the dining room he looked down the muzzle of a double-barreled shotgun which Mr. Fowler had aimed at his head. The appellant was arrested and taken to jail.

On the trial of the case the appellant admitted calling Mrs. Fowler both times and admitted making the engagement or date with her, but he denied using vulgar, obscene and insulting language, which was charged in the indictment and introduced by Mrs. Fowler by writing the words upon a piece of paper which was subsequently shown to the jury. Leaving out the formal parts of the indictment, the language in the indictment is as follows:

> (D)id wilfully, unlawfully, and feloniously use profane, vulgar, indecent, obscene and insulting language over the telephone during the course of a telephone conversation which he the said Gerald "Jack" Spears originated and which was directed to and received by Mrs. Sara Fowler in violation of Section 2291.5 of the Mississippi Code of 1942, Recompiled, As Amended; said language being too filthy to be spread upon the records of this court but expressing in obscene words the desire of the defendant to have sexual intercourse with the said Mrs. Sara Fowler; against the peace and dignity of the State of Mississippi.

Prior to the selection of a jury, the appellant filed a motion to quash the indictment and, in support thereof, contended that the indictment wholly fails to charge in substance any crime against the appellant and especially under section 2291.5, in that said indictment does not specify the obscene language allegedly used by defendant in the conversation with Mrs. Sara Fowler over the telephone, which language is the gist of the offense contemplated by the statute and which language was unknown to defendant. Defendant asserts he can-

not properly defend the case because he does not know what obscene language was allegedly used; that the indictment is not drawn in such a manner as to advise the defendant of the obscene language allegedly used, and is vague and uncertain; since the alleged obscene language is not set out in the indictment, the defendant, if tried on this indictment, could not plead former jeopardy in the event he was indicted again.

Appellant's motion to quash was overruled by the trial court and the case proceeded to trial. On the *voir dire* the appellant, through his attorney, objected to the district attorney bringing up any other telephone calls, and moved that the jury panel be quashed and a mistrial be entered. This motion likewise was overruled, the court stating:

There has been no statement to the jury that any other calls were made by this defendant, or by anybody else, and the Court will further say that the jury is not to get the impression that there was any other calls. I didn't get that impression, and the Court says that there has been no statement made to the effect that any other calls were made.

Numerous objections were made by the appellant in the trial of the case, some of which are assigned as errors, and the appellant also made several motions for a mistrial, all of which were overruled. After the verdict and judgment were entered in this case, a motion for a new trial was made by the appellant, which likewise was overruled. There are numerous errors assigned by the appellant, several of which constitute reversible error. However, we will concern ourselves not only with those which are reversible but also those which, on a retrial of this case, should not be committed again.

The first error assigned is that the trial court erred in overruling appellant's motion to quash the indictment. The writer of this opinion does not agree that the lower court erred in overruling appellant's motion to quash

the indictment, but concurs with the dissenting opinion on this particular error, written by Justice Gillespie in this cause, in that the writer is of the opinion that the indictment is sufficient to sustain the conviction. A large majorty of this Court concludes that the appellant's motion to quash the indictment should have been sustained, and this opinion expresses their conclusions on this point.

The constitutional right of one accused of violating the law to be informed of the nature and cause of his accusations has long been recognized in this Court. In the case of Jesse Walton v. State, 64 Miss. 207, 8 So. 171 (1886), Jesse Walton was tried and convicted on an indictment charging as follows:

(T)hat he "did unlawfully in a public place, to-wit: on the streets of the town of Sardis, and in the presence of two persons, profanely curse and swear, contrary to the form of the statute in such case made and provided."

The Court, speaking through Chief Justice Cooper, in an opinion of but twenty-eight words, acutely stated: "The motion to quash the indictment should have been sustained. The words spoken constituted the gist of the offense, and should have been set out in the indictment." He cited "3 Bishop on Cr. Proc. 123; 1 Wharton on Cr. L. 351; Steuer v. The State, 59 Wis. 472." This Court has been astute down through the years in requiring that the constitutional right of the accused be protected and safeguarded in this regard.

In Williams v. State, 130 Miss. 827, 94 So. 882 (1922), which deals with obscene matter which appeared in a publication called the "Wampus Cat," the indictment was based upon what is now Mississippi Code Annotated section 2288 (1956), which prohibited "obscene or indecent book(s), writing(s) . . . ." The appellee urges that the decision in the Williams case is controlling here. In the Williams case the affidavit was attacked

on the ground that the exact language complained of was not set out in the affidavit. In that case Justice Sykes, speaking for a majority of the Court, said:

If timely objection had been made it would perhaps have been the duty of the state to amend the affidavit by more fully describing the alleged obscene matter which appears to be the whole or a part of a publication called the Wampus Cat, and to have either set out in full the obscene matter therein, or allege that it was too obscene to be spread upon the records of the court. (130 Miss. at 843.)

This case is distinguishable from the case at bar in two regards: First, in the Williams case the timely objection was not made, but in the case at bar it is made; and second, the language complained of in the Williams case is written language which occurs in a publication, and the specifying of the language from a publication could be far more difficult than when certain specific indecent, vulgar and obscene words are used.

Appellee urges the rule to be that the general purport and tenor of the language (1) should be set forth, or (2) should be set forth in *haec verba;* or (3) it must be alleged in the indictment or affidavit that the matter is too voluminous or too scandalous to be set out in the record of the court.

Since the decision of the Williams case in 1922, this Court has followed the general rule as represented by the majority rather than the rule as stated in the dissenting opinion.

In the case of Love v. State, 211 Miss. 606, 52 So. 2d 470 (1951), this Court in a per curiam opinion, speaking through Justice W. N. Ethridge, stated:

The established rule is stated in 27 Am. Jur., Indictments and Informations, Sec. 54, as follows: "It is the constitutional right of the accused, under the organic law of the nation and of the several states,

'to be informed of the nature and cause of the accusation' against him, and under these provisions, the accused is entitled to a plain statement of the charge against him. It is fundamental, of course, that an indictment, to be effective as such, must set forth the constituent elements of a criminal offense; if the facts alleged do not constitute such an offense within the terms and meaning of the law or laws on which the accusation is based, or if the facts alleged may all be true and yet constitute no offense, the indictment is insufficient. . . . Every material fact and essential ingredient of the offense . . . must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilt must be stated in the indictment.'' See ibid, Secs. 51-63, 79; 42 C.J.S., Indictments and Informations, Sections 130-137-138. (211 Miss. at 610-11.)

It is further said in that case:

This result is in accordance with the consistent application by this Court of the principle that an indictment must expressly charge the essential elements of a crime and that failure to do this authorizes a challenge of the indictment for the first time on appeal. See State v. Sam, 1929, 154 Miss. 14, 122 So. 101. (211 Miss. at 611.)

■■■ Repeatedly this Court has held that an indictment based upon a statutory offense must charge all of the essential elements of the statutory crime and is void for failure to do so. Rogers v. State, 198 Miss. 495, 22 So. 2d 550 (1945); also, May v. State, 209 Miss. 579, 47 So. 2d 887 (1950); Kelly v. State, 204 Miss. 79, 36 So. 2d 925 (1948); Crosby v. State, 191 Miss. 173, 2 So. 2d 813 (1941). In the Kelly case we stated that Code Section 2449 ''was not intended to deprive any citizen accused of a felony of his right to have the nature and cause of the accusation preferred against him clearly and fully stated, and any abridgement of

the right to be thus informed in any substantial particular would be unconstitutional . . . ." 204 Miss. at 87.

See Stark v. State, 81 Miss. 397, 33 So. 175 (1903); Finch v. State, 64 Miss. 461, 1 So. 630 (1887); Harrington v. State, 54 Miss. 490 (1877); Miss. Const. art. 3, sec. 26; U. S. Const. amend. XIV.

 █ It cannot be asserted categorically that vulgarity, obscenity, indecency, or insulting language is uniform to all men. In the vast fields of inheritance, environment and mores we find great differences in individual concepts and judgment of what constitutes vulgarity, obscenity, and indecency. The decency which is protected by a statute is that which the predominant majority of minds agree upon. Justice George Ethridge, writing a dissenting opinion in the Williams case, commented as follows:

> There is a broad field in which individual judgment differs as to what is indecent and what decent. The decency that may be protected by a statute is that which the preponderant majority of minds agree with. (130 Miss. at 848.)

 While the language of the statute is general in its terms, when you come to allege the offense, specific acts should be alleged, which acts on their face show a violation of the law. Whether the matter set out in the indictment is obscene or not is a question of law primarily for the court to decide as a matter of law. The court under the indictment in the case at bar could not have determined from the indictment whether or not the language was obscene, vulgar, indecent or insulting because it did not have the words before it to pass upon the question. It is our stated opinion that the motion to quash the indictment should have been sustained by the trial judge, and the statutory and constitutional safeguards of the appellant would have thus been protected.

The second error assigned by appellant is that the trial court erred in refusing to sustain the objections of the appellant wherein the prosecuting witness was permitted to write the words allegedly spoken to her over the telephone instead of testifying orally what they were.

Mrs. Fowler was asked by the prosecution if she would tell the jury in general terms the nature of the telephone call she received. She replied: "The language that was used was very vulgar, very obscene." To this the appellant objected, whereupon the prosecution then made this statement: "The prosecution moves at this time that the witness be permitted to write the words rather than speak them in view of their apparently obscene nature."

The Court: "What says counsel for the defendant?"

Mr. Carter: "We object to that, may it please the Court, for the reason that this is supposed to be a public hearing as guaranteed by the Constitution, and we object to the writing of any words on a piece of paper, or any other written words at this stage of the trial."

The Court: "The witness has stated that certain words used by the caller were tantamount to making an illicit proposition to her, and the indictment alleges that words to that effect were made. In further response to that question and with reference to that particular specific point and item of the conversation, I am going to permit the witness to write the words on a piece of paper, and I will direct that the writing first be shown to defendant and his counsel, and then be shown to the Court, and I will then rule on whether it may be shown to the jury."

The Witness: "He asked me - - - I didn't think I understood what he said the first time, and I asked him, 'What did you say?', and he repeated it with a slight variation. Should I wrote (sic) both of those?"

The Court: "You may write both of those remarks or statements."

The witness wrote both statements upon the paper and handed it to counsel for the defendant and then handed it to the court.

The Court: "The Court rules that this paper may be shown to the jury, passed around and shown to each juror in lieu of oral testimony. The page consists or the writing consists of two very brief statements and they are written in a legible hand and are easily read. After this paper is shown to the jury, then it will become a part of the record and a part of the testimony."

To this procedure counsel for the appellant strenuously objected and again assigned the reason that the appellant was entitled to an open hearing and entitled to hear every word of testimony spoken. The objection was overruled and the paper was then presented to the jury, who examined the same. Counsel for appellant again objected for the reason that it had not been established that the appellant spoke the words written on the paper and shown to the jury, which objection was also overruled. It is obviously that the trial court, in an effort to prevent the prosecuting witness from being embarrassed or further humiliated, decided to permit the witness to thus testify by writing the obscene words upon the piece of paper. Counsel does not cite any controlling case in Mississippi, nor have we been able to find one squarely in point. The rule with reference to deaf mutes has no application at bar. However, there is good *secondary* authority in support of the position taken by the appellant. In 14 Am. Jur. *Criminal Law* sec. 176, at 889-890 (1938), we find under the heading "Right To Be Confronted By Witnesses," an analysis wherein it is said:

(T)he process of confrontation has two purposes — the main and essential one and a secondary one. The

main and essential purpose of confrontation is to secure the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing on a witness or of being gazed on by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers. That this is the true and essential significance of confrontation is demonstrated by counsel and judges from the beginning of the hearsay rule to the present day. The opportunity to cross-examine must be real. A mere formal proffer of an opportunity, where the circumstances are such that the accused cannot effectively avail himself of it, is not a sufficient observance of the right. The secondary advantage is to be obtained from the personal appearance of the witness. The judge and jury are unabled to obtain the elusive and incommunicable evidence of a witness's (sic) deportment while testifying, and a certain subjective moral effect is produced on the witness. This secondary advantage, however, does not arise from the confrontation of the opponent and the witness. It is not the consequence of those two being brought face to face. It is the witness's (sic) presence before the tribunal that secures this secondary advantage which might equally be obtained whether the opponent is or is not allowed to cross-examine.''

 ■ ■ There is no legal or rational basis upon which the refusal of the trial court to require the witness to speak the vulgar and obscene words can be predicated. The appellant was entitled to a free, full and complete cross-examination of the prosecuting witness or any witness who testified against him. This is guaranteed by both the state and federal constitutions. A defendant on trial for his life or liberty is entitled to hear and also to have the jury hear the words spoken by the

witness and observe the demeanor, attitude and appearance of the witness when the words are spoken. The appellant was entitled, though embarrassing to the witness, to exercise the right of cross-examining this witness with reference to the words spoken. This constitutes the essence of a fair trial, and without it a defendant is denied his state and federal constitutional rights. We appreciate the fact that since the appellant's attorney, when examining the witness, did not question her with reference thereto, but we do not construe this to be a voluntary waiver of this right. Any further efforts on the part of the appellant's attorney to force this witness to speak those words, after the court had ruled she did not have to say them, would have produced nothing more than a violent, hostile reaction on the part of the jury. The court inadvertently had already impressed upon the jury, by its overruling of the appellant's objection, the fact that the words were of a most vulgar and obscene nature, and their repetition would constitute an impropriety. We are compelled to hold that it was reversible error not to require the state's prosecuting witness to testify orally to the jury the words which were spoken to her by the appellant, which were the gravamen of the indictment.

The third error assigned by the appellant is that the court erred in permitting counsel for the state to propound questions to defendant asking him if he had not had other ''dates'' or made other calls to a number of women whose names were stated to him. Over specific objections and over a continuing objection of the appellant, the lower court permitted the county attorney to interrogate the appellant in the presence of the jury about calls made to seventeen other women concerning the same proposition which he is alleged to have made to Mrs. Fowler over the telephone. The appellant moreover made a motion for a mistrial because the county attorney had asked these questions over the

objection of appellant's attorney, which motion was over-ruled. The county attorney began his interrogation on this point by asking the appellant these questions: ''I am going to ask you, Mr. Spears, if you remember calling Mrs. Fred Bell and making this same sort of proposition to her?''

The only inference which can be placed upon this question was whether or not the appellant used the same vulgar, indecent language in requesting a ''date'' with Mrs. Fred Bell. There is no other logical conclusion which can be drawn from the question, and there is no doubt that the jury knew the county attorney was incriminating the appellant by asking the question. In spite of the objections made by appellant's attorney, and in spite of the motion for a mistrial made by the appellant, which the lower court overruled, the county attorney was permitted to continue asking the appellant seventeen different times if he did not call seventeen different women, one of whom was the sheriff's wife, and request ''dates'' with them. The only logical finale which the jury could draw was that the appellant used the same vile, vulgar and indecent language to all of these women, many of whom were married. It is obvious that all of these calls were made prior to the time of the alleged call to Mrs. Fowler. There is no doubt that each one of these constituted a separate offense for which the appellant could be indicted, and could be tried if proof were available. While possibly legal issue can be joined with reference to the other errors assigned, there certainly can be no doubt, insofar as this error is concerned, that the questions asked of this appellant, and his being forced to deny the same, were highly prejudicial to his right of a fair trial. The questions repeated again and again were calculated to inflame and incite the minds of the jury and highly prejudice them against the appellant. It is not unreasonable to assume that members of the jury knew one

or more of the seventeen women whom the county attorney asked the appellant if he had not called, and propositioned.

 We have repeatedly held that in criminal prosecutions generally evidence which tends to show the accused commissions of separate and distinct crimes is not admissible unless, as was pointed out in the Clark case, "it has a direct bearing on the question at issue, or where there is an apparent relation or connection between the act proposed to be proved and that charged." 181 Miss. at 461.

(Hn 10) In the May case we held "that evidence of other crimes is incompetent except to show identity, guilty knowledge, intent or motive, or where the offense charged is so interwoven with other offenses that they cannot be separated. Collier v. State, 106 Miss. 613, 64 So. 373. See also Clark v. State, 181 Miss. 455, 180 So. 602; Massey v. State, Miss., 19 So. (2d) 476 . . . ." 205 Miss. at 304-05.

See also Seid v. State, 226 Miss. 886, 85 So. 2d 585 (1956); Brown v. State, 224 Miss. 498, 80 So. 2d 761 (1955); Scarbrough v. State, 204 Miss. 487, 37 So. 2d 748 (1948).

In Hawkins v. State, 224 Miss. 309, 80 So. 2d 1 (1955), the district attorney was permitted, over objections, to ask Hawkins, the defendant, questions about other insurance he had collected in his lifetime; hadn't he collected insurance after getting hurt on a railroad; about insurance he had on his three year old grandson; about insurance he had collected when his son was killed; about sick and accident insurance he had collected; about insurance he had collected on a gasoline service station that burned, and suits against a railroad company for damages for personal injuries. We stated in that case:

> We think that the court erred in permitting the district attorney to interrogate the defendant concern-

ing the collection of the proceeds of a life insurance policy on his son, who appears to have been killed in the State of Louisiana several years before the death of the defendant's wife, and the collection of disability benefits under a health and accident policy which the defendant had purchased for himself and on which he had paid the premiums, and the collection of fire insurance on the gasoline service station at Forest which had been damaged by fire during the early summer. The court also erred in permitting the district attorney to interrogate the defendant concerning the insurance policy on his 3-year old grandson, in which the appellant was named as beneficiary, and the suit against the railroad company for damages for personal injuries, which the defendant had prosecuted to a successful conclusion many years before the date of the alleged homicide. The evidence relating to all of these matters in our opinion was wholly irrelevant to the issue which the jury had to decide, and the admission of the testimony was extremely prejudicial to the accused.

The general rule regarding the inadmissibility of proof of other crimes or offenses in the trial of criminal cases is stated in 20 Am. Jur., 287, Evidence, par. 309, as follows:

"A person, when placed upon trial for the commission of an offense against the criminal laws, is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the indictment against him. It is a well established common law rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless the other offenses were con-

nected with the offense for which he is on trial. In other words, it is not competent to prove that the defendant committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the indictment, for ordinarily such proof will not reflect any light upon the special crime with which the defendant stands charged.''

. . .

The general rule as adopted by our own Court is that evidence of other crimes than the one for which the accused is being tried is inadmissible, and if it be doubtful whether such evidence falls within any of the exceptions to the rule, it should be excluded. King v. State, supra; Herman v. State, supra; Raines v. State, supra; Dabney v. State, 82 Miss. 252, 33 So. 973; Willoughby v. State, supra; Collier v. State, 106 Miss. 613, 64 So. 373. (224 Miss. at 324-25-26.)

We held in the Hawkins case that evidence about other crimes should not have been admitted, and the case was reversed and remanded.

In Seid v. State, *supra,* two witnesses were permitted to testify, over appellant's objection, that, on two or more previous occasions a month or more before the larceny of the dies, they had broken into several different places and stolen liquor, cigarettes, chewing gum, and other items, and at different times sold the articles to Seid, who knew the property had been stolen. In disposing of this case this Court, speaking through Justice Lee, said:

There was no connection whatever between the previous purchases of liquor, cigarettes, etc., and the purchase of the dies. They were not interwoven. It was easy to separate them. In point of time, a month or more had elapsed. It was not necessary to receive such evidence in order to show scienter, or guilty knowledge. Both of the state witnesses testified that

Seid knew that the dies had been stolen. This evidence did not come within the exceptions to the general rule against its introduction. It was inadmissible. Besides it was highly prejudicial. Because of this error, the cause must be reversed and remanded. (226 Miss. at 891.)

In 3 Am. Jur. *Appeal and Error* sec. 1029 (1936) under the caption "Examples of Prejudicial Error," we find this quotation:

The most general test of prejudice in the admission of evidence is the probability that the evidence thus erroneously admitted influenced the verdict by arousing the sympathy or passions of the jury, or resulted in a miscarriage of justice or a violation of a constitutional or statutory right. Where there is such a conflict in the evidence that a determination either way would not be disturbed on appeal, it cannot be said that the losing party is not prejudiced by material evidence erroneously admitted, and this has been held true even though the evidence was cumulative. The fact that the evidence relates to a vital or principal point in the case or to a material fact has been regarded as important upon the subject of its prejudice. This is especially true in criminal cases.

In 20 Am. Jur. *Evidence* sec. 309, under the caption "Other Crimes", we find this pertinent quotation:

Generally.—A person, when placed upon trial for the commission of an offense against the criminal laws, is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the indictment against him. It is a well-established common-law rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the com-

mission of the particular crime charged, unless the other offenses are connected with the offense for which he is on trial. In other words, it is not competent to prove that the defendant committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the indictment, for ordinarily such proof will not reflect any light upon the special crime with which the defendant stands charged. The principle is applicable to evidence of attempts to commit crimes and statements of intention to commit them. This general rule that a person who is on trial charged with a particular crime may not be shown to be guilty thereof by evidence showing that he has committed other crimes is said to be one of the distinguishing features of our common-law jurisprudence.

We are forced to agree with appellant that the act of the county attorney in asking him questions on the witness stand as to other calls of a similar nature made to the other seventeen women could only inflame, incite and prejudice the minds of the jury against him. If for no other reason, this case would have to be reversed because of this error. It is to be noted that there is no effort on the part of the county attorney or the district attorney to impeach this witness; not one single witness took the stand to contradict or refute the denial of the appellant of making these additional obscene and vulgar calls. It is to be noted that the appellant in his testimony did not attempt to tesify as to his character and therefore there was no authority for the appellee to impugn the character of this appellant insofar as other separate offenses of a similar nature are concerned.

This Court is aware that there has been a surfeit of profane, obscene, vulgar, indecent and insulting language spoken by vicious, depraved and immoral persons who have used the telephone in order to insult,

enrage, humiliate, embarrass and mortify innocent victime. The large areas involved and the type and frequency of the depraved calls indicate a malevolent concerted attempt to abuse and insult innocent citizens. No one should be required to endure this vile and unlawful harrassment. This Court deplores this odious condition, but this fact does not afford this Court or any court the right to deny the appellant his just constitutional rights and deprive him of his right to a fair and impartial trial.

As was said in the Scarbrough case:

This is not one of those cases for the application of the rule that a conviction will be affirmed unless it appears that another jury could reasonably reach a different verdict upon a proper trial than that returned on the former one, but rather it is a case where the constitutional right of an accused to a fair and impartial trial has been violated. When that is done, the defendant is entitled to another trial regardless of the fact that the evidence on the first trial may have shown him to be guilty beyond every reasonable doubt. The law guarantees this to one accused of crime, and until he has had a fair and impartial trial within the meaning of the Constitution and Laws of the State, he is not to be deprived of his liberty by a sentence in the state penitentiary. (204 Miss. at 497.)

This rule holds full sway in the case at bar. It follows that, because of the errors which have been committed, we conclude that the appellant has not had a fair and impartial trial. Therefore, this case is reversed and remanded and the appellant held on his $1,000 appearrance bond, pending the amending of the indictment by the state so as to make it proper under the appropriate statute.

Reversed and remanded.

All Justices concur except *Gillespie, J.,* who dissents.

GILLESPIE, J., dissenting:

I dissent with considerable reluctance. My colleagues have given careful and dedicated study to this case, and I have great respect for their collective judgment. In cases of this kind the real problem of the courts is to balance the rights vouchsafed to the individual with the rights and the needs of the community and the State. It is nearly impossible to try a criminal case of any importance without some error being committed, and I believe that within the framework of the guarantees of the law and the Constitutions an appellate court should view errors in the perspective of Miss. Rules Rules 11 regarding harmless error.

The majority has found three errors, two of which do not in my opinion exist, and the third should not work a reversal within the meaning and purpose of Rule 11.

I.

The majority holds that the indictment should have been quashed because it did not set out verbatim the obscene words used by the defendant in the telephone conversation. The indictment set out the substance of the obscene words and stated that the language was too filthy to be spread upon the records of the court. The general rule in other jurisdictions is that an indictment in a case of this kind is sufficient if the substance of the obscene words is set forth in the indictment and it is charged that the words are so filthy that it would be offensive to public decency to have them made a part of the record.

A similar question arose in Williams v. State, 130 Miss. 827, 94 So. 882 (1922), and this Court stated that, ''If timely objection had been made it would perhaps have been the duty of the state to amend the affidavit by more fully describing the alleged obscene matter which appears to be the whole or a part of a publication called The Wampus Cat, and to have either set out in full the obscene matter therein, or alleged

that it was too obscene to be spread upon the records of the court.'' 130 Miss. at 843.

It is said that the quotation is a dictum, but it is an expression of this Court and constituted a part of its reasoning process. It followed the general rule announced by the following authorities: *Dunlop v. U. S.,* 165 U. S. 486, 17 S. Ct. 375, 41 L. Ed. 799 (1897); *Lanoy v. State,* 94 Fla. 1175, 115 So. 510 (1928); *People v. Friedrich,* 385 Ill. 175, 52 N. E. 2d 120 (1944); *McNair v. People,* 89 Ill. 441 (1878); *Kinnaird v. Commonwealth,* 134 Ky. 575, 121 S. W. 489 (1909); *Commonwealth v. Allison,* 227 Mass. 57, 116 N. E. 265 (1917); *State v. Van Wye,* 136 Mo. 227, 37 S. W. 938 (1896); *Charville v. State of Ohio,* 6 Ohio App. 236 (1916); *State v. Zurhorst,* 75 Ohio St. 232, 79 N. E. 238 (1906).

## II.

Another error assigned by the majority for reversal concerns the action of the trial court in permitting the prosecuting witness to write the two obscene sentences on a piece of paper and passing the paper around to the jury. This seems to me to be a matter within the sound discretion of the court. It cannot be said that the confrontation rule was violated. The witness was sitting in the witness chair. It seems that the courts of any community should have the right to defer to the delicacies of opinion and if a witness would be embarrassed by speaking the words it should be left to the sound discretion of the trial court. It is entirely possible that if witnesses in cases of this kind are required by the court to utter filthy and obscene words from the witness stand, they will simply refuse to subject themselves to that kind of embarrassment and the administration of the laws will suffer. In my opinion, there is no merit in the contention that appellant was prejudiced by the way the witness communicated to the jury the obscene words involved. There are no

known cases requiring a reversal for this alleged error. Moreover, in my opinion, counsel for appellant waived any objection that he had to this method of introducing the evidence because when he cross-examined the prosecuting witness he told her not to repeat the obscene words. I think that this was acquiescence and waiver.

### III.

The third error assigned by the majority for reversal of this case consisted of permitting the prosecuting attorney to ask the defendant if he had called seventeen different women and asked them for dates. The first question included the statement whether he made the same sort of proposition to that party. The objection was then made to the court on the ground that it was an attempt to prove another crime. The court stated there was nothing in the question to indicate that this was an attempt to prove another crime, and thereupon the next sixteen questions simply asked the defendant if he had called certain ladies without any suggestion that there was anything criminal about the call. Therefore, all of the sixteen questions after the court's ruling had nothing to do with proof of another crime, and the cases concerning proof of other crimes are not applicable.'

The defendant had offered himself for cross-examination and there is ample authority for the proposition that a wide range of latitude is allowed not only to test his memory but to impeach him. I have serious doubts if an error was committed under the particular circumstances of this case. However, I believe that the court should have sustained the objection. This does not require a reversal of the case. Miss. Rule 11 is as follows:

No judgment shall be reversed on the ground of misdirection to the jury, or the improper admission or exclusion of evidence, or for error as to the matter

of pleading or procedure, *unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice.* (Emphasis added).

Can this Court say there was a miscarriage of justice? I think not. The proof in this case is so overwhelming that no jury in search of truth could have rendered any other verdict than guilty. There is no constitutional question involved in this matter of evidence and it is, in my opinion, a classic case for the proper application of the harmless error rule. This Court has applied this rule in criminal cases numerous times where there was error in the admission or exclusion of evidence. Traxler v. State, 244 Miss. 403, 142 So. 2d 14 (1962) ; Stokes v. State, 240 Miss. 453, 128 So. 2d 341 (1961) ; Williams v. State, 239 Miss. 839, 120 So. 2d 535 (1960).