396 So.2d 39 (1981)
James T. TAYLOR
v.
STATE of Mississippi.
No. 52488.
Supreme Court of Mississippi.
April 1, 1981.
J.R. Butler, Butler & Butler, Eupora, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
James T. Taylor was found guilty of disturbing the peace and resisting arrest[1] on a de novo trial in the Circuit Court of Montgomery County and was sentenced to pay fines of one hundred dollars ($100.00) and two hundred dollars ($200.00), respectively. He has appealed and assigns the following errors:
(1) Should an accused be convicted of disturbing the public peace by using loud, offensive, and profane language in a public place with the intent to provoke a breach of the peace without the state proving (1) the loud, offensive and profane language used or (2) the public place or both?
(2) May one be convicted of resisting arrest without proof of an initial valid and lawful arrest?
*40 The appellant was refused a peremptory instruction of not guilty at the trial. Although he has not assigned such action as error, the two assignments above mentioned, together with the request that the cases be dismissed, are tantamount to an assignment of the refusal to grant the peremptory instruction and we consider them as such.
Linda Nail and her family lived approximately one-quarter (1/4) mile from Eunice M. Nail and her family. Vervie Taylor, mother of the appellant, lived approximately four hundred (400) feet from the Nail houses and appellant, who lived in the State of Illinois, was visiting in her home for two weeks. On the night of May 14, 1979, Linda Nail heard loud shouts, cursing, gunfire, and a horn blowing at the Taylor home. According to Eunice M. Nail, the language was profane, and she likewise heard the horn blowing and two (2) shotgun blasts. Sheriff Billy Costilow was telephoned and a complaint was registered.
Sheriff Costilow answered the complaint, went to the Eunice M. Nail home where he obtained information from the Nails, and then he and Deputy Sheriff James Johnson went to the Taylor home to determine whether the appellant was making the noises. The officers had no arrest warrant and testified that they did not go to the Taylor home to arrest anyone. When they arrived and knocked on the door, someone said, "Come in." They entered the house and saw appellant sitting in a chair intoxicated and his wife and mother were also in the room. Sheriff Costilow asked if anybody had heard a disturbance going on, appellant got up and, according to the officers, cursed and attempted to strike the sheriff. Sheriff Costilow testified as follows:
"DIRECT EXAMINATION:
* * * * * *
Q. Was he just cursing and carrying on, you say?
A. Yes, sir.
Q. What did you do when he started acting like that?
A. I placed him under arrest and put the cuffs on him and brought him on to jail.
Q. What did you arrest him for?
A. Resisting arrest, at that time.
Q. Go ahead.
A. Also, for refusing to obey me.
* * * * * *
CROSS-EXAMINATION:
* * * * * *
Q. At the time you went up to Mr. Taylor's, you didn't have a warrant for his arrest, did you?
A. No, I didn't go up there to arrest him.
Q. You didn't have a search warrant to search the home.
A. No, I did not. And, I didn't search it."
Deputy Sheriff Johnson testified to the following:
"DIRECT EXAMINATION:
* * * * * *
A. We didn't never really get to tell him. He just went to cussing us and he balled his fist up and jumped up at us and we wrestled around there and finally got the handcuffs on him and brought him on to the jail.
Q. All right, what did you arrest him for?
A. For public drunk, disturbing the peace and resisting arrest.
Q. I'm having trouble hearing you.
A. Public drunk, disturbing peace and resisting arrest.
* * * * * *
CROSS-EXAMINATION:
* * * * * *
Q. And, again, what was he arrested for when he was placed under arrest?
A. He was arrested for disturbing the peace and  I'm not sure, but I believe he was arrested for public drunk and resisting arrest.
Q. What was the disturbing the peace charge he was arrested for? What *41 was that about? Was that about the Nails, or was that about something that happened when the Sheriff arrived at Mr. Taylor's house?
A. What happened there at the house in front of us.
Q. Whose peace was he disturbing at the time in front of you at his mother's house?
A. He was disturbing our peace.
Q. The Sheriff's and the deputy's peace. He wasn't disturbing his mother?
A. I don't know. I didn't ask her."
There are four (4) statutes which related to disturbance: Mississippi Code Annotated Sections 97-35-9, -11, -15, and 97-29-47 (1972). It is difficult to ascertain from the record under which section the State proceeded. It appears from the evidence that the State attempted to prosecute under one of the following sections:
"§ 97-35-11. Disturbance of family  abusive language or indecent exposure.

Any person who enters the dwelling house of another, or the yard or curtilage thereof, or upon the public highway, or any other place near such premises, and in the presence or hearing of the family or the possessor or occupant thereof, or of any member thereof, or of any female, makes use of abusive, profane, vulgar, or indecent language, or is guilty of any indecent exposure of his person at such place, shall be punished for a misdemeanor."[2]
"§ 97-35-15. Disturbance of the public peace, or the peace of others.

(1) Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than five hundred dollars ($500.00), or by imprisonment in the county jail not more than six (6) months, or both.
(2) The provisions of this section are supplementary to the provisions of any other statute of this state."
The State submitted the issue of disturbing the peace by Instruction S-1 which stated:
"[T]he defendant did willfully, unlawfully, purposely, and knowingly disturb the public peace, in that the defendant did use loud, offensive, and profane language in a public place with the intent to provoke a breach of the peace, then it is your sworn duty to find the defendant guilty as charged."
and submitted the issue of resisting arrest by Instruction S-2 which stated:
"[T]he defendant did unlawfully, willfully, purposely, and knowingly resist his lawful arrest by Montgomery County Sheriff, Billy Costilow, in that the defendant did use threats or force to prevent his lawful arrest, then it is your sworn duty to find the defendant guilty as charged."
The Court has defined a "public place" as one wherein, by general invitation, members of the public attend for reasons of business, entertainment, instruction or the like, and are welcome so long as they conform to what is customarily there done. Nelson v. City of Natchez, 197 Miss. 26, 19 So.2d 747 (1944).
The only places involved under the facts of this case were the Nail homes and the Taylor home. It is difficult to understand how the State can harmonize the evidence as to disturbance in a home and the charge of disturbance in a public place. It is elemental that to establish a case of disturbance of the peace, either public or private, the words used and the things done are the gist of the offense and must be specifically proved. Such was not done in the present case. Spears v. State, 253 Miss. 108, 175 So.2d 158 (1965).
*42 The prosecution wholly failed to make out a case against appellant of disturbing the public peace.
As stated, the officers testified that they had no arrest warrant for appellant and went to the Taylor home only to find out whether the noises were made by any person there. The arrest of Taylor in his home (his mother's) was without authority. There is no statute prohibiting a person from being drunk or cursing in his own home. In Smith v. State, 208 So.2d 746 (Miss. 1968), officers arrested the defendant on a misdemeanor charge of reckless driving not committed in their presence, without an arrest warrant in their actual possession. In holding that the arrest was unlawful and that the defendant had a right to use reasonable force to resist the arrest, the Court said:
"The offense of resisting arrest presupposes a lawful arrest. A person has a right to use reasonable force to resist an unlawful arrest. Pettis v. State, 209 Miss. 726, 48 So.2d 355 (1950); Craft v. State, 202 Miss. 43, 30 So.2d 414 (1947); 5 Am.Jur.2d Arrest § 94 (1962). The officer sought to arrest appellant for a misdemeanor, reckless driving. Although the arrest warrant for this misdemeanor had been issued and was in the sheriff's office, the arresting officer did not have the warrant in his possession at the time of arrest.
In the absence of a statute to the contrary, and there is none in Mississippi, under the overwhelming weight of authority an officer making an arrest for a misdemeanor not committed in his presence must have the warrant for such arrest in his actual possession if the arrest is to be lawful. Restatement (Second) of Torts § 126 (1965); 1 Alexander, The Law of Arrest § 92, at 477 (1949); 5 Am.Jur.2d Arrest § 72 (1962); 6 C.J.S. Arrest § 4c (1937); Fisher, Laws of Arrest § 54, at 114-15 (1967); Prosser, The Law of Torts § 25 (3d ed. 1964)." 208 So.2d at 747.
Here, the officers admittedly went to the Taylor home to investigate the noises reported by the Nails. They had no right to enter the Taylor home to make an arrest without a warrant and, in fact, stated that they did not go there for the purpose of an arrest. There was no basis under the evidence for the arrest of appellant and the charge of resisting arrest cannot stand.
With reference to the disturbance of the peace charge, the State's brief recites:
"The evidence clearly established that the appellant's actions occurred in a public place, and that appellant used offensive and profane language with the obvious intent to provoke a breach of the peace."
Further, at page 6 of the State's brief, it is stated:
"In view of the above facts and cases, it is clear that the officers were acting within the scope of their duty. And that a recently fired shotgun was within appellant's easy reach."
It is incredible, under the facts and law of this case, that the State would contend that the alleged violation occurred in a public place and that the officers were acting within the scope of their duty, and that the appellant was properly convicted without reversible error.
REVERSED AND APPELLANT DISCHARGED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] The charges were combined for trial.
[2] Amended by Mississippi Code Annotated § 97-35-11 (Supp. 1980).