512 So.2d 666 (1987)
Ronald WILLIAMS
v.
STATE of Mississippi.
No. 56975.
Supreme Court of Mississippi.
July 29, 1987.
*667 Minor F. Buchanan, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This burglary case arises out of an after midnight victimization of one of life's more helpless creatures  a thirty-year-old mentally retarded female who lived somewhat alone in a Jackson apartment. Questions are presented regarding the weight of the evidence, the nature and extent of the prosecution's obligation to prove criminal intent attendant upon the breaking and entering and prosecutorial misconduct. Although on the latter point the prosecution skated perilously close to familiar limits upon his conduct, we find in the end no error warranting reversal.

II.

A.
Janice Bates is the thirty-year-old adopted daughter of Harry Bates. She lives alone in Jackson above her father's cafe, Thelma's Pink Kitchen, which is not unusual except that Janice has the mind of an eight to ten-year-old child. She communicates only with members of her family familiar with her sign language. Janice Bates was not able to tell about the night her stepbrother found her partially nude and beaten about the face.
It all happened in the early morning hours of April 13, 1985. Jackie Davis, Janice's stepbrother, was "messing around" on Lynch Street after having helped out at the cafe, and he decided to turn in for the night. He headed for the apartment above the cafe, as he had sometimes done in the past, since his parents' home is clear across Jackson. The apartment has six rooms and two beds. There is always a place to stay.
The apartment faced a side of the Pink Kitchen. Davis entered and began walking up a flight of wooden stairs. At about the fourth step he looked up and saw Ronald Williams coming out of the door and putting his shirt back on. Before this, Davis knew Williams slightly.
Davis heard his stepsister "hollering" and ran up the stairs to check on her. He found her in the apartment, bleeding from the mouth and nude from the waist down. Janice usually sleeps with her clothes on. Davis then ran back down the stairs and searched for Williams but without success. He came back to the Pink Kitchen and called his parents who then called the police.
Davis had found Janice at about 4:00 a.m. By the time he called his parents some fifteen to twenty minutes had elapsed.
Prior to all of this, Janice was locked into the apartment every night by her stepfather, Harry Bates. Still Janice could open the door from the inside and Davis only has to knock to gain entrance. After calling his parents Davis examined the door to the apartment. One window pane had been *668 broken out near the doorknob. Williams had been living with his mother. When the police came to Janice's apartment, Davis told an officer what had happened and then accompanied the officer to Williams' mother's house. Williams was not there.
Jackson Police Officer Doug Winstead investigated the incident. The telephone call from Janice's parents had been received at the Jackson Police Department at 4:18 a.m. on April 13, 1985. Officer Winstead went immediately to the apartment over the Pink Kitchen and found Janice Bates as we have described her, her face having been beaten, her mouth bleeding. A window pane in the door was broken. The glass was on the floor inside, suggesting that the pane had been smashed from the outside. That the glass was still on the floor suggested that the pane had been freshly broken.
Some three and a half hours earlier, around 1:00 a.m., Harry Bates had locked Janice in the apartment. The door was in its ordinary condition at the time and no pane had been broken. Bates received a phone call from Jackie Davis around 4:00 a.m. and immediately called the police. He went to the cafe, found the police there and his daughter was crying. She had blood on her mouth and no panties on. The door had one glass pane "busted out."
Ronald Williams knew Jackie Davis and admitted seeing Davis. He was on the street going to the home of Fred Williams when he saw Jackie Davis going away from the Pink Kitchen.
The way Ronald Williams and Jackie Davis knew each other is this. Davis is a friend of Anthony Parker. Parker is the son of Williams' mother's husband. Parker had been living with Williams' mother until she caught him stealing and she kicked him out. Williams suspected that Parker was "going to repay" him. Williams at one point thought Anthony Parker framed him.[1]
On the afternoon of April 12, Williams had been standing outside his mother's house when Fred Williams passed by and invited him over. Ronald went to Fred's house at about 5:00 to 6:00 p.m., then left and went to his mother's house and then to an unnamed friend's house to play cards until about midnight. In the vicinity of midnight, he then went home, called Fred Williams and asked to come over again. He went to Fred's house for about fifteen to thirty minutes and then went back home to sleep until his mother's poodles woke him up. He then went back to Fred Williams' house. It was at this time that he saw Jackie Davis going away from the Pink Kitchen. He got to Fred Williams' house at about 4:00 a.m., and he and Fred sat up and watched television for about twenty minutes before dozing off. Fred Williams woke up Ronald at about 7:00 a.m. Ronald then went home and his mother's husband told him the police were looking for him. Ronald went down to the police station but was not arrested at that time and in fact was not arrested until some two weeks later.
Geraldine Burton, Ronald Williams' mother, saw her son around 11:30 or 12:00 on the night in question. She did not see him again until the next morning.
Fred Williams is a retired school teacher. He recalls that Ronald came to his house the afternoon of April 12, that he came back around midnight and that he came back again around 4:00 a.m. Fred was up as he lives alone and stays up reading and writing at night. "Since I knew his mother, I just let him in." Ronald did not look as though he had been running or was disheveled in any way.

B.
On July 8, 1985, the Hinds County Grand Jury returned an indictment charging Ronald Williams with burglary of an occupied dwelling. Miss. Code Ann. § 97-17-21 (1972). The case was called for trial in Circuit Court sitting in Jackson, Mississippi, on September 19, 1985. At the conclusion of the trial the jury returned a verdict finding Ronald Williams guilty as charged. Williams was sentenced to a term of fifteen years in the custody of the Mississippi Department *669 of Corrections, with five years suspended and ten years to be served.
In due course, Williams filed a motion for a new trial. On October 10, 1985, the Circuit Court overruled and denied the motion. Williams now appeals to this Court.

III.

A.
Williams argues that the verdict of the jury was contrary to the overwhelming weight of the evidence and, because this is so, Williams urges that we reverse and remand for a new trial. Such an assignment of error in effect charges that the Circuit Court erred in overruling Williams' motion for a new trial.
Williams points to two said-to-be deficiencies in the evidence against him. First, he complains that the prosecution's case rises or falls with the eyewitness testimony of Jackie Davis and points to the fact that Davis saw Williams for only approximately ten seconds. This, Williams says, is not enough. Second, having reference to the charge of burglary, Williams urges that the proof is inadequate on the felony he is charged with intending to commit once inside the dwelling, to-wit: sexual battery upon a mentally defective person. We will consider the latter point first.

B.
The crime of burglary has two essential elements, to-wit: the forcible breaking and entering of an occupied dwelling and, second, the intent to commit some crime while in the dwelling. Miss. Code Ann. § 97-17-21 (1972); Winston v. State, 479 So.2d 1093, 1095 (Miss. 1985). Williams' argument would have us redefine the crime. He would require that, before one is guilty of the burglary, he must not only break and enter but that he must also complete the separate crime therein. Armed with his "redefinition," Williams points to the prosecution's failure to prove sexual penetration such as is necessary to establish the crime of sexual battery. See West v. State, 437 So.2d 1212 (Miss. 1983). The flaw in Williams' argument is that on the present indictment the prosecution was not required to prove sexual penetration of Janice Bates, merely that Williams broke and entered with intent to commit that crime.
This point has been made repeatedly. Moore v. State, 344 So.2d 731 (Miss. 1977) held that the crime of burglary was established once the breaking and entering plus the intent to rape had been proved. The fact of rape did not have to be proved. 344 So.2d at 735. Other cases holding that the intent to commit some crime  as distinguished from the actual commission of that crime  is the second element of burglary include Winston v. State, 479 So.2d 1093, 1095 (Miss. 1985); Fondren v. State, 253 Miss. 241, 251-53, 175 So.2d 628, 632-33 (1965); Taylor v. State, 214 Miss. 263, 58 So.2d 664 (1952); Tate v. State, 193 Miss. 386, 9 So.2d 788 (1942); Newburn v. State, 205 So.2d 260 (Miss. 1967).
Intent may be inferred "from the time and manner in which entry was made and the conduct of the accused after entry, intent is a state of mind seldom susceptible of direct proof absent a confession." Butler v. State, 217 So.2d 3, 5 (Miss. 1968); Winston v. State, 479 So.2d 1093, 1095 (Miss. 1985); King v. State, 342 So.2d 892 (Miss. 1977); Thames v. State, 221 Miss. 573, 73 So.2d 134 (1954); Fondren Alias Taylor v. State, 253 Miss. 241, 175 So.2d 628 (1965).
In Butler, the defendant, after breaking in the door of the house, pointed at his quarry in the presence of her grandmother and stated that the child was prettier than he thought. He then made a statement about how he wanted to have sexual intercourse with her. Proof of intent was rather less obvious in Fondren, supra, wherein the defendant put his arm around the woman's body and did not leave until she told him the police were coming. In Lee v. State, 201 Miss. 423, 29 So.2d 211 (1947), reversed on other grounds, 332 U.S. 742, 68 S.Ct. 300, 92 L.Ed. 330 (1948), the Court stated that "A specific intent to ravish is, at least, consistent with the proven facts and reasonable inferrable" from the evidence that the victim was wakened by *670 blows to her head. Lee, 29 So.2d at 212. "A burglarious breaking is evidence of some unlawful purpose," the Court continues tautologically. Lee, 29 So.2d at 212. In King v. State, supra, intent was proven using the victim's statement and the defendant's own statement which he later repudiated.
Janice Bates' mental retardation adds difficulties to this case. Of course, in most cases of mere burglary of an occupied dwelling where the underlying intended crime is rape or fondling, etc., the intended victim may testify as to those acts of the defendant from which his intent may be inferred. This is unfortunately not true in the present case where the victim did not testify. But the same was so in Moore v. State, 344 So.2d 731 (Miss. 1977), where the victim was murdered. Burglary within intent to commit rape was the underlying felony in the capital murder charge. The defendant challenged the evidence of the rape but the court found that the evidence of sperm and foreign pubic hairs on the victim's body were sufficient to prove intent to rape.
In the instant case, the silent evidence is not as compelling as that in Moore. Janice Bates' bloody mouth, battered face, and unclothed lower half, however, speak no less about her attacker's intent than did the testimony in Fondren, supra, wherein the defendant merely put his arms about his victim or that in Lee, supra, in which the defendant hit the victim about her face.
In sum, the second element of the burglary with which Williams was charged was intent to commit sexual battery. The evidence was legally sufficient to establish that intent.

C.
Williams' complaint that the only direct evidence against him was the identification testimony of Jackie Davis fares little better. Davis gave quite credible testimony that he was acquainted with Williams and that he did indeed see Williams coming out of the apartment in the early morning hours of April 13. The testimony of a single uncorroborated witness is sufficient to sustain a conviction, Holt v. State, 186 Miss. 727, 191 So. 673 (1939), Ragland v. State, 403 So.2d 146 (Miss. 1981), even though there may be more than one person testifying to the contrary, Freeland v. State, 285 So.2d 895 (Miss. 1973); Clanton v. State, 279 So.2d 599 (Miss. 1973).
In the end, Williams' assignment of error runs afoul of well established limitations upon our scope of review. In Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983), this Court, in addressing the argument that the verdict was against the overwhelming weight of the evidence, stated:
We have literally hundreds of decisions considering the circumstances under which we will vacate a jury verdict in a criminal case and remand for a new trial. We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.
Continuing with a detailed explanation of the function of a jury, Groseclose states that "It is enough that the conflicting evidence presented a factual dispute for jury resolution," and reiterates the oft repeated phrase "the strength or weakness of the testimony is not measured by the number of witnesses." Groseclose, 440 So.2d at 300. See also Spiers v. State, 231 Miss. 307, 94 So.2d 803 (1957), and Bond v. State, 249 Miss. 352, 162 So.2d 510 (1964).
Suffice it to say that the credible evidence in this case establishes that Ronald Williams was in the vicinity at the time and on the occasion in question. Shortly after his departure the previously locked door was found with a pane broken out and that Janice Bates was found inside in a beaten and semi-nude condition. The physical appearance of Janice Bates as described by the witnesses was more than sufficient to establish that Williams had broken into the apartment and was up to no good. Consistent *671 with the limitations upon our scope of review, this assignment of error is denied.

IV.
Jury Instruction S-2 contains a definition of sexual battery as "the sexual penetration of a mentally defective person." Williams charges error in the Circuit Court's submission of this instruction to the jury, arguing that there is no competent evidence of any sexual battery.
Williams misses the point. Evidence of the commission of a sexual battery on Janice Bates is not required. Williams was on trial for burglary. The State was required to prove that Williams broke and entered Bates' apartment with intent to commit some felony therein. The second element of burglary is the intent to commit some other crime, not the actual consummation of that other crime. See Winston v. State, 479 So.2d 1093, 1095 (Miss. 1985); Moore v. State, 344 So.2d 731, 735 (Miss. 1977); Newburn v. State, 205 So.2d 260 (Miss. 1967); Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965).
As an incident to trying Williams for breaking and entering with intent to commit sexual battery, it was, quite obviously, proper that the jury be told what sexual battery was. But not for the purpose of allowing the jury to consider whether Williams committed sexual battery, only that he intended to commit it. The definition given, as the sexual penetration of a mentally defective person, is in accord with the statutory definition. See Miss. Code Ann. § 97-3-95 (Supp. 1985).

V.
Williams next argues that the comments of the Assistant District Attorney regarding his prior conviction of trespass constituted grounds for a mistrial. The point arose in this manner.
On direct examination by his own counsel, Ronald Williams admitted to having been charged with several crimes previously: a 1976 forgery charge, trespass auto, trespass, and armed robbery. On cross, the Assistant District Attorney delved into the trespassing charge,
Q. In fact, your last conviction before this was in 1984, wasn't it?
A. Yes, sir.
Q. Trespassing in a house?
A. Trespassing, yes, sir.
Q. At that time you broke in on a little twelve-year-old girl, didn't you?
Defense counsel objected immediately and the jury was told to disregard the question. At the close of the State's rebuttal case, defense counsel renewed his motion for a directed verdict. The motion for new trial did not include the Assistant District Attorney's query as a reason supporting the motion although it did allege error in the District Attorney's closing remarks concerning a previous charge of robbery.
The prosecutor's question about breaking in "on a little twelve-year-old girl" should not have been asked. Where the accused has taken the stand on his own behalf, he may be questioned regarding any previous convictions. Scarborough v. State, 204 Miss. 487, 37 So.2d 748 (1948); Miss. Code Ann. § 13-1-13 (1972). But see Rule 609, Miss.R.Ev., effective January 1, 1986. This is so because it goes to the credibility of the witness. Griffin v. State, 292 So.2d 159 (Miss. 1974). However, the defendant may not be asked to divulge any details of the convictions including whether or not he served any time for the conviction. Smith v. State, 217 Miss. 123, 63 So.2d 557 (1953); Benedetti v. State, 249 So.2d 671 (Miss. 1971); Murray v. State, 266 So.2d 139, cert. den. 411 U.S. 907, 93 S.Ct. 1534, 36 L.Ed.2d 196 (1972); and Mangrum v. State, 232 So.2d 703 (Miss. 1970). Because the prosecuting attorney asked for details, the question was improper.
Upon defense objection, however, the jury was instructed to ignore the question and this admonition came before Williams could answer the questionable query. Our law presumes the jury does as it is told. Shoemaker v. State, 502 So.2d 1193, (Miss. 1987); Horne v. State, 487 So.2d 213 (Miss. 1986); Holifield v. State, 275 So.2d 851 (Miss. 1973), cert. dismissed 414 U.S. 990, 94 S.Ct. 382, 38 L.Ed.2d 253; *672 Hughes v. State, 376 So.2d 1349 (Miss. 1979).
The assignment of error is denied.

VI.
During closing argument, the Assistant District Attorney attacked Williams' credibility:
Do you want to believe him? Five time loser. Three major felonies. One on a capital offense, armed robbery; and two serious misdemeanors he has been convicted of in his life.
Now let me be the first to assure you also that you cannot conclude that he was guilty of these other five times that he's guilty this time. The law doesn't allow you to think that. But the law does allow you to think about those convictions in deciding how worthy he is of believing. We are known by our past lives. He's spent his life in a life of crime. He once in a armed robbery stuck a gun in somebody's face and stole from him. Do you want to believe a man like that? I don't believe you do.
He continues by stating:
I don't understand people who are bent on committing rape or people bent on committing sexual battery... . But it would seem to me, that having made the decision to do such a crime, in heavens name they could at least pick on a grown person of sound mind and body who might at least have a chance ... to defend themselves. Who does he go in on? A mental, pitiful cripple.
Defense counsel failed to object to the closing until after the verdict when he included the Assistant District Attorney's remarks in a list of errors in a motion for a new trial.
The failure of an objection is fatal. Johnson v. State, 477 So.2d 196 (Miss. 1985). To be sure, the prosecuting attorney took a bit of poetic license in characterizing Williams' prior armed robbery conviction and, in doing so, imperiled the conviction secured. We trust it is clear by this time that prosecuting attorneys pursuing such a tactic  or that described above in characterizing the trespass offense  are taking unnecessary chances with the judicial process and where reversals result they will have only themselves to blame. In the context of today's record and the content of the points raised, however, we are of the view that the legally correct course is to reject the assignment of error and affirm.

VII.
The indictment charging Williams with burglary is signed only by the district attorney. The space provided for the foreman's signature is left blank. Williams now argues that this rendered the indictment legally insufficient to sustain this prosecution.
Jones v. State, 356 So.2d 1182 (Miss. 1978) holds that defects, such as this, specifically including the absence of the foreman's signature, are considered procedural and must be raised by demurrer to the indictment or they be waived. No such demurrer or challenge to the indictment was here made. On the authority of Jones, the assignment of error is denied.
CONVICTION OF BURGLARY AND SENTENCE OF FIFTEEN (15) YEARS, WITH TEN (10) YEARS TO BE SERVED AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ. and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] On this appeal Williams argues that Jackie Davis was Janice's assailant.